# Lindeman *et al. versus* Lindsey.

1. When the proprietors of opposite banks of a stream wish to enjoy the water-power, a dam cannot be built except by mutual consent.

2. If built without the consent of either, he could abate it.

3. If both agree to erect a dam with a covenant for themselves, their heirs and assigns, to repair or rebuild, it is a covenant running with the land and the stipulations of the agreement in respect to the water-power created by the dam are the basis of their rights.

4. If the instrument contain the grant of an easement to one on the land of the other, there is no statute of limitations against it, without actual, hostile and adverse possession.

5. In such case there is no prescription or presumption from mere non-user.

6. Nothing less than an absolute denial of the right, followed by an enjoyment inconsistent with its existence for 21 years, can amount to an extinguishment.

7. Owners on opposite sides of a stream agreed by covenant, running with the land, jointly to erect a dam, each to have the use of half the water. In an action by one for diverting the water by the other, it was competent for the former, in answer to the allegation that he had lost his right by non-user, to prove that a predecessor of the latter, having obstructed the right, he demanded it and it had been yielded.

8. The use of the water was directly granted by agreement under seal; case was the proper remedy for its diversion.

9. St. Mary's Church *v.* Miles, 1 Wharton 229, recognised.

May 11th 1871. Before AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cumberland county:* No. 68, to May Term 1871.

[Lindeman *v.* Lindsey.]

This was an action on the case "for infringement of water-right," brought September 8th 1869, by Thomas Lindsey against Jacob Lindeman and George Fishel.

The declaration contained six counts; it set out that the plaintiff owned a fulling-mill and had the right to the water of the Conodoguinet creek, by which his mill was propelled. And averred:

1. That the defendants by running a grist-mill "diverted and took away the water properly belonging to the fulling-mill."

2. That defendants took for their mill more water than they were entitled to.

3. That defendants so used their gates that more water than should be was taken from plaintiff's mill.

4. That defendants so used their mill that they wasted and otherwise misapplied the water of the stream so that plaintiff had not sufficient water for his fulling-mill.

5. That plaintiff was engaged in manufacturing by which he made $2000 per annum, but defendants by use of their mill deprived him of its proper proportion of water.

6. That defendants by "maliciously running" their grist-mill took away from the fulling-mill the water belonging to it, and otherwise "maliciously and wilfully used and wasted the water requisite for the fulling-mill."

The plaintiff owned a fulling-mill on one side of the Conodoguinet, and Lindeman, the defendant, a grist-mill on the other side.

The fulling property was owned, on the 17th of April 1821, by John Whisler, and the grist-mill at the same time by Jonas Rupp. On that day Rupp and Whisler entered into this agreement:

* * * "Whereas, the said parties contemplate erecting a dam upon the said creek, for the purpose of using the water of the same creek, for mill-works, to be erected on the lands lying contiguous to said creek, on which they now respectively reside. Now, therefore, &c., the said Jonas Rupp *covenants and engages for himself, his heirs, executors, administrators and assigns, that he, or they, or some of them,* shall and will, during the ensuing summer, at his or their proper costs, &c., sufficiently build, &c., a dam upon and over the Conodoguinet creek aforesaid, from shore to shore, at such place, and of such dimensions as may be agreed on between the said parties, the said dam to be built at right angles with the stream of the creek, and to be so constructed as to raise the water in the dam three feet six inches, &c. * * * And in case that the said dam should be injured or destroyed by high water or otherwise, then the said Jonas Rupp, or his heirs, is to repair or rebuild the same again, at his own or their proper expense or charges, as first aforesaid, and in case the said John Whisler *his heirs or assigns* should erect a mill, they shall be at liberty to use one-half of the water in the said dam.

[Lindeman *v.* Lindsey.]

" And the said John Whisler, for himself, his heirs, executors and administrators, covenants and engages that as soon as he or they shall erect any mill at or near the said dam, and draw any water out of the said dam for said mill, that he or they shall and will forthwith pay to the said Jonas Rupp, his heirs or assigns, one-half of the expense of the millwright costs paid in building and constructing the dam aforesaid by the said Jonas Rupp, his heirs or assigns. And in case the said dam should be injured or carried off or destroyed, it shall again be repaired or rebuilt by and between the said parties at their joint and equal expenses, if such injury happened after the mills shall have been erected on both sides of the dam aforesaid. * * *

" It is further agreed that the said Jonas Rupp may apply for the view of a road, from the fording, &c. * * * And for the true and faithful performance of the articles and covenants within mentioned, each of the parties bindeth himself, his heirs, executors and administrators, unto the other, his heirs, and assigns, in the sum of one thousand dollars."

This agreement was recorded April 25th 1820.

Through various intermediate conveyances, Whisler's title became vested in the plaintiff and Rupp's in the defendants, and Fishel was his tenant at the mill.

The plaintiff testified that the defendants, in September 1869, ran their mill day and night, and when he did so, the water was low ; he started on Sabbath evening and on Monday morning there was no head for the fulling-mill ; he remonstrated with both defendants, but it was not stopped ; plaintiff told them that he would bring suit if they continued to run their mills so ; they continued and he brought this suit ; he had complained to former occupants and they would generally stop the mill.

The plaintiff offered to prove by Jeremiah Bowers, " that he was a former owner of the property now held by Lindsey, and while he was occupying and carrying on the factory, Wilhelm was the occupier of the Lindeman property ; they made the repairs to the dam, share and share alike, and when the water was too low to enable the witness to do work at his factory, he went over to Wilhelm, and complained that he was using more water than belonged to him, and that witness would not stand it ; that he, witness, was entitled to one-half the water ; that then Wilhelm stopped one of his wheels until the head gathered."

The offer was objected to by the defendants, admitted, and a bill of exceptions sealed.

The witness testified in accordance with the offer.

There was other evidence for the plaintiff, corresponding with all that stated above ; also that when the water was flush Lindeman defendant and his predecessors used more than one-half without objection ; that the plaintiff's mill did not require so much

[Lindeman *v*. Lindsey.]

water as the defendants'; that the dam had been kept up by both parties. Defendants gave evidence that the dam leaked; that there was enough water in the creek to drive two mills, if the dam were tight; that there never had been any restriction to the use of the water by either owner; that in 1865 the water being low the plaintiff was told that the dam must be gravelled; he promised to furnish some hands towards doing it, but did not.

The defendants proposed to ask a witness what is the capacity of the Conodoguinet creek at Bucher's mill, ten miles by the stream above Lindeman's mill? How many pair of burrs are run?

To show that at Bucher's mill, constructed on the same principle as that of defendants, there is always sufficient water to drive two wheels, such as those of plaintiff and defendants, and to be followed by proof that large streams of water enter the creek below Bucher's mill, and above plaintiff's and defendants'.

The plaintiff objected, the evidence was rejected and a bill of exception sealed.

The plaintiff's points with the answers were:—

1. The agreement of the original owners, Whisler and Rupp, followed by repairing the dam at the mutual and equal expenses of the holders of the respective titles, still makes the basis of the rights of the parties, and Lindeman cannot use more than one-half of the water to the prejudice of the opposite owner.

Answer: "We answer this in the affirmative, unless you find that Lindsey, by his own conduct, deprived himself of the benefit of half the water, by refusing to join Lindeman in repairing the dam, and thus by his own neglect, permitted it to become leaky or his forebay and gate to become in such bad repair as unnecessarily to waste the water, which he ought to have applied to propelling his wheels."

2. The condition of the dam is no excuse for Lindeman using more than his proportion of the water. The agreement and subsequent conduct of the holders of the respective titles, in paying for repairs, fix their respective rights, and are not meant for a good dam only, but for the water as found in that dam, and even if Lindsey refused to do his share of the repairs of the dam, yet, Lindeman had no right to the whole, as he could have repaired and charged Lindsey with the one-half of the expenses.

Answer: "We cannot answer this point as requested. If Lindsey refused, after request, to join Lindeman in repairing the dam, and by such neglect and refusal the dam became leaky, and the water in the dam was insufficient to propel the mill, he cannot avail himself of his own wrong to recover for his own neglect, if the water permitted to escape would have given Lindsey his equal share if he had joined Lindeman in repairing the dam when requested. But if the leaky condition of the dam was owing to

[Lindeman v. Lindsey.]

the mutual neglect of both parties, and Lindeman never requested Lindsey to join him in repairing the dam, then if Lindeman used more than half the water retained in the dam in its leaky condition, to the injury of Lindsey, Lindeman would be responsible for any damage sustained by Lindsey."

3. If the parties adhered to the agreement in paying for the repairs and recognising it in paying expenses, no statute of limitations will apply, nor a legal presumption arise, and the rights of the parties to the water continued the same.

Answer : " If the parties adhered to the agreement as stated in this point, the legal presumption arising from lapse of time would not arise."

The first three points of the defendants asserted that the form of action should have been covenant, and that the plaintiff could not recover in case. The court denied these points.

Their other points with their answers were :—

4. If the jury believe that for a period of twenty-one years prior to the bringing of the present suit, the owners of defendants' mill have been in the habit of using the water at their mill, without any restriction as to time and quantity, then they had acquired a right to an unrestricted use of the same, and the verdict should be for defendants.

Answer : " As a legal proposition this point is correct. A use of a privilege for twenty years will, in law, raise the presumption of a grant. But in this case there is a written agreement defining the rights of the parties. By that agreement each party was entitled to one-half of the water in the dam. The evidence shows, we think, that defendants' mill required more water to operate it than the plaintiff's mill. If prior to the use of the water of the stream in 1869, of which plaintiff complains, both parties had sufficient water for the use of their respective mills, and Lindsey and those under whom he claims had a sufficiency of water for the use of their mill, and received no injury by the owners of the opposite mill using more than one-half of the water—this would not confer on Lindeman or those under whom he claims a right to use more than one-half the water ; if in doing so the mill of Lindsey was injured by reason of defendants appropriating more than half the water to the use of their mill. A party cannot be deprived of a right by not complaining before he has been injured by a deprivation of the right."

5. If the owners of defendants' mill have been in the habit of using for twenty-one years and upwards, prior to the commencement of this suit, all the water needed for grinding wheat and running their machinery, irrespective of the stage of the water, then plaintiff has no reason to complain of defendants, if during the year 1869 they used no more water than necessary for this purpose, although they ran their mill both night and day.

19 P. F. Smith—7

[Lindeman *v.* Lindsey.]

Answer: "We cannot answer this as requested, for the reasons stated in our answer to the 4th point."

6. If the jury believe that, for a period of twenty-one years prior to the commencement of this suit, the owners of the two mills, plaintiff's and defendants' were in the habit of using, without complaint, all the water that they needed, or that they could get upon their wheels, and at such times as they needed it, or as the pressure of business required it, then neither has a right to complain of the other, if at any time he should use more than half the water in the dam, so long as the natural channel of the stream is not interfered with, nor a greater amount of water taken by either than he has been in the habit of using during the said period of twenty-one years.

Answer: "We cannot answer this as requested. If neither party was injured by the manner in which the water was used until shortly preceding the time when this suit was brought, a party cannot forfeit a right by not complaining before he is injured."

7. The undisputed evidence in the case and the evidence of the plaintiff himself is, that for a period of twenty-one years, prior to the bringing of this suit, both mills have been in the habit of running at such times, as their business required it, night and day; and therefore each has now the right to run as his business requires, and no cause of action will accrue to either party if during a time of low water one should be compelled, by his business, to run night and day, and thus take more than half the water in the creek.

Answer: "We cannot answer this point as requested, for the reasons stated in our answers to the former points. The evidence referred is for the jury."

The verdict was for the plaintiff on the 2d count of the declaration for $75.

The defendants took a writ of error, and assigned errors, viz.:
1 and 2. The rulings as to the evidence.
3–5. The answers to the plaintiff's points.
7–13. The answers to the defendants' points.

*S. Hepburn, Jr.*, for plaintiffs in error.—Covenant and not case was the proper and only remedy upon the agreement between Whisler and Rupp: Angell on Watercourses, § 441; Wilbur *v.* Brown, 2 Denio 356; Luckee *v.* Rowzee, 1 A. K. Marsh. 295; Savage *v.* Mason, 3 Cush. 318. The rights of the parties were not fixed by that agreement. Long usage could alter or modify it as well as destroy it; and the fact whether there had been such usage was for the jury: Strickler *v.* Todd, 10 S. & R. 69; Richards *v.* Elwell, 12 Wright 361; McCallum *v.* Germantown Water Co., 4 P. F. Smith

[Lindeman v. Lindsey.]

59; Angell on Watercourses, §§ 135, 428, 429, 432; Young v. Spencer, 10 B. & C. 145; Hobson v. Todd, 4 Term R. 71; Pastorius v. Fisher, 1 Rawle 27. If the water in the dam was wasted by the mutual negligence of the parties, both were contributors to their own injury and neither could recover: Catawissa Railroad v. Armstrong, 13 Wright 193; Little Sch. Nav. Co. v. Norton, 12 Harris 145. The offer of plaintiff was not evidence for any purpose, and that of defendant was proper in answer to plaintiff's evidence. The court should not have determined the fact in answer to defendant's 5th point, and should have answered the question of law presented in it: Angell on Watercourses, § 100.

W. M. Penrose and Henderson & Hays, for defendant in error.—As to the form of action: McCall v. Forsyth, 4 W. & S. 176; Nickle v. Baldwin, Id. 290; Smith v. Seward, 3 Barr 342; Ingles v. Bringhurst, 1 Dall. 346; Martin v. Willink, 7 S. & R. 297, 298; Findley v. Keim, 12 P. F. Smith 112.

The opinion of the court was delivered, May 25th 1871, by

SHARSWOOD, J.—Seven points were presented by the plaintiff in error to the learned judge below, and thirteen errors have been assigned here. All these assignments may be disposed of by the consideration of two questions, neither of which seems to us to present any serious difficulty. The first is, What was the legal right of the plaintiff below? And the second, If his right was infringed, did he adopt the proper form of action as his remedy to enforce it? Every other question in the cause appears to have been a question of fact for the decision of the jury and properly submitted to them.

When the proprietors of two opposite banks of a stream of water are desirous of enjoying the advantage of the water-power for propelling machinery, a dam for that purpose cannot be built except by mutual consent, unless indeed it may be what is termed a wing-dam confined to the soil of the person who erects it, or that half of the bed of the stream which belongs to him. If erected by either, on the land of the other, it would clearly be a trespass, and could lawfully be abated by him upon whose land it was built without his consent. When, therefore, they enter into an agreement to erect such a dam, with a covenant for themselves, their heirs and assigns to repair or rebuild it if necessary, it is not a personal covenant merely, but runs with the lands of the respective proprietors, and the stipulations contained in such agreement in respect to the enjoyment of the water-power created by the dam form the basis of their respective rights. It is sufficient to refer to Jamison v. McCredy, 5 W. & S. 229, as a case entirely parallel if not in point. If the instrument contain the grant of

[Lindsey *v.* Lindeman.]

an easement or privilege to either party in the land or the water, against such a grant there is no statute of limitation without actual hostile and adverse possession, and certainly no prescription or presumption from mere non-user. Nothing less than an absolute denial of the right, followed by an enjoyment inconsistent with its existence for a period of twenty-one years or more, can amount to an extinguishment of it. In St. Mary's Church *v.* Miles, 1 Wharton 229, it was decided that in the case of the reservation of a ground-rent by deed, no length of possession of the land without payment of the rent would raise the presumption that it had been released or extinguished. "Although it may be," said Mr. Justice Kennedy, "that the law will in some cases presume a grant in support of a right which has been exercised and enjoyed by a person, without objection or interruption, to the exclusion of all others, for a period of twenty years or more, yet it does not follow that it ought to make such a presumption, in order to defeat a person of a right created by deed and not controverted, without anything being shown to have taken place in the conduct of the parties interested or concerned in the right that was inconsistent with the existence and enjoyment of it." To the same effect is Butts *v.* Ihrie, 1 Rawle 218 ; Nitsell *v.* Paschall, 3 Ibid. 82. It is entirely in accordance with reason and the fitness of things that such should be the law. A man ought not to be obliged unless he requires it, actually to use a right or privilege secured to him by deed, nor to resort to legal proceedings unless his title is denied, and he is actually ousted, disseised, obstructed or prevented by some wrongdoer from an enjoyment of it when he requires and demands such enjoyment. Hence the learned judge below was perfectly right in his answers to the points of the plaintiff in error so far as they set up a title by prescription in him, arising from the mere non-user by the grantor or those claiming under him of the right secured by the agreement between the former owners Rupp and Whisler, dated April 17th 1820. If the plaintiff below had ceased to require the water at all, if he had abandoned the use of his mill entirely, and the defendant and those under whom he claimed had enjoyed all the water for any period of time without denial of the right under the agreement or repudiation of its existence and obligations, he could resume his right at any time, certainly as long as his mill was there. On the other hand, the opposite party could acquire nothing by prescription contrary to the terms of the agreement under which the dam was built, and was to be repaired and maintained. It would perhaps make a different case if the plaintiff below or those under whom he claimed had refused to perform their part of the agreement to contribute in equal proportions to the maintenance and repair of the dam. In this respect the plaintiff in error has no cause to complain of the answers of the court below. Certainly

[Lindeman *v.* Lindsey.]

mere neglect to do so, much more when both parties are equally negligent, would not cause a forfeiture of the privilege or easement vested by the deed. It is an entirely different case from that of an injury arising from negligence or other wrongful act, where if in an action to recover damages, any concurrent negligence which at all contributed to produce the injury, appears in the plaintiff he can recover nothing. The covenants to repair were mutual : either party could repair and sue the other for contribution. The defendants could show that they had called on the plaintiff to repair, and he had refused or neglected after such demand. So the learned judge instructed the jury in his answer to the plaintiff's first point. The agreement secured to the plaintiff one-half of the water in the dam, much or little, unless it was reduced by his own fault. The joint erection and maintenance of that structure could be referred to nothing but contract. There was no right to build it or obligation to maintain it independent of contract. The contract of the parties then was the law of its use and enjoyment. The learned judge below was therefore entirely accurate in his instructions to the jury contained in his answers to the several points of the plaintiff and defendants which have been assigned for error, so far as they relate to the plaintiff's title to the free and undisturbed use and enjoyment of one-half of the water in the dam in question. It is unnecessary to examine them separately, and in detail, as the application of the principles to which we have referred will evince, we think, that the assignments of error cannot be sustained.

The same principles show also that the learned judge was right in his rulings upon the admission and rejection of evidence, which were excepted to and form the subjects of the first and second assignments of error. It was competent for the plaintiff to prove that he had made a demand for the enjoyment of his right when obstructed, and that it had been yielded by the occupant, whether owner in fee or tenant. It was like an entry to toll the statute. It interrupted the prescription set up by the defendant. It was in disproof of the pretension that he had lost his right by non-user or non-claim. If I have a right of way by grant or reservation, I can surely give evidence that I have claimed and used it without denial or obstruction by the occupant of the land. This evidence is not to make out a right against the landlord from acquiescence by the tenant in the use or enjoyment of the property adverse to his title. This certainly the acts or declarations of the occupant or tenant are incompetent to effect, and are therefore in such a case inadmissible ; but this rule does not apply where the object is to meet and disprove the assertion that a right depending upon express grant has been lost or abandoned. The distinction between these two cases is very apparent. So too it was totally immaterial whether the amount of the water in the dam was suf-

[Lindeman *v.* Lindsey.]

ficient, if the dam had not leaked, to run both mills; and even if it had been, upon the supposition that the jury might find that the plaintiff had refused to repair upon demand, of which however there seems to have been no evidence to go to the jury, the mode proposed to prove it was entirely inadmissible. The fact that mills higher up the stream were run with a less amount of water would have introduced questions entirely collateral and irrelevant as to the mills on the Conodoguinet from its source to its mouth. The plaintiff below was entitled by the agreement of 1820 to half of the water in the dam, not merely to so much as was necessary to run his mill: the parties had wisely precluded all dispute on that subject by making the grant perfectly definite. When he was denied and disturbed in the enjoyment of that right to his injury by the act of the defendants in actually taking and using more than half, so that necessarily, half was not left for him, it was no answer to say that he had as much as he needed to run his mill. In point of fact, the injury he suffered and for which he recovered damages, was that he had not as much as was necessary for that purpose.

The remaining errors relate to the form of action. It is contended that it should have been covenant on the agreement of 1820. But here there is a very plain distinction to be taken. Had there been in that agreement a covenant by Rupp, for himself, his heirs and assigns, not to take more than half the water in the dam, there might have been some plausibility in the contention that he must resort to his remedy upon that. But there is no such covenant in the instrument. The covenants relate to the construction and repair of the dam and in regard to an application for a private road. Upon the breach of any of these covenants the remedy would have been by action of covenant upon the agreement. But in regard to the easement or privilege of Whisler, his heirs and assigns, to take and use one-half of the water, it was a direct grant, not a covenant. "And in case the said John Whisler, his heirs or assigns, should erect a mill, they shall be at liberty to use one-half of the water in the said dam." No one has ever supposed before, that upon a grant by deed of an easement or privilege upon land or land covered with water by one man to another, the remedy for a disturbance of such easement or privilege was an action of covenant upon the deed. Take a common case of the grant or reservation of a right of way. Surely an action on the case may be maintained by the grantor for the obstruction of it, as well against the grantee and those claiming under him as against strangers. The books are full of such cases in which no such point was made: Watson *v.* Beiren, 1 S. & R. 227; Kinkham *v.* Sharpe, 1 Whart. 333; Jamison *v.* McCredy, 5 W. & S. 129; Van Meter *v.* Hankinson, 6 Whart. 307; Ebrier *v.* Sticther, 7 Harris 19. But, contends the counsel for the plaintiffs in error with great ingenuity, the grant to Whisler of one-half

[Lindeman *v.* Lindsey.]

of the water is an implied covenant that the grantor will not take the other half. True, it is so, in popular language, but that does not constitute a technical covenant. In the grant of a right of way or common in the grantor's land, there is the same implied covenant by the grantor that he will not disturb its enjoyment. But that, as we have seen, does not prevent the plaintiff from resorting to an action on the case to recover damages for its disturbance.

Judgment affirmed.