## G. N. HORN v. S. MILLER ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BEDFORD COUNTY.

Argued May 12, 1890—Decided October 6, 1890.
[To be reported.]

(a) Cade and Miller, owning respectively adjoining lands on a stream, made an agreement, in settlement of an action by Cade against Miller for diverting water from one channel to the other, which provided that Cade, his heirs and assigns, should enjoy a "water right or power" for two wheels on any part of his land, and Miller, his heirs and assigns, should enjoy water for his mill only when there was a surplus:

1. The superior right, recognized in the agreement as being in Cade, was

a right as a riparian owner; therefore, as the covenants in the agreement related to the lands of the respective parties, and were to be performed thereon and in connection with the use and enjoyment thereof, they ran with the land and regulated the mutual rights of the heirs and assigns of the parties, respectively.

2. While privity of estate is ordinarily necessary to a covenant running with the land to which it relates, justice will require that the right to enjoy such contracts should extend to all who have a beneficial interest in their fulfilment; and, when the benefit and the burden of covenants securing mutual rights are so inseparably connected that each is necessary to the existence of the other, both must go together.

3. When the land of one of the parties to such an agreement as the above has been conveyed by him, it is of no consequence that the deed may make no mention of the agreement or of the rights accruing therefrom; the right of such party as a riparian owner, recognized and defined by the agreement, will pass as appurtenant to the land, and it is unnecessary to mention it in the deed.

4. The assignee of a part only of such land, who is the owner of the only mill-seat on the original tract, may sue for a diversion of water made by the successor of the party who covenanted with his assignor; that mills may be built on other parts of the land, which will use the water after it leaves his mill, cannot affect the servient tenement, or, if it would, the apprehension thereof will not justify such diversion.

5. When landowners have entered into covenants, defining and securing their respective rights in the use of the water of a stream, their agreement is equivalent to a grant; and, as in other cases of grants of easements, the proper remedy of one party for a disturbance of his right by the other party, or those claiming under him, is by action of trespass and not by action of covenant.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 152 July Term 1889, Sup. Ct.; court below, No. 395 September Term 1887, C. P.

On September 12, 1887, G. Newton Horn brought trespass against Samuel Miller and others, for an alleged wrongful diversion of water from the plaintiff's mill. The defendants pleaded not guilty, and afterwards added a plea averring adverse user.

At the trial on November 29, 1888, the following facts were shown:

The plaintiff was the owner of a tract of land containing 9 acres and 120 perches, near the town of Hyndman, on which was a grist-mill, run by water power obtained from Wills creek.

Statement of Facts.

About a mile above the mill, that creek divided into two channels, whether naturally or artificially did not clearly appear. One of those channels passed through the plaintiff's land, and supplied the water for his mill; the other passed through a tract owned by the defendant, Samuel Miller, and from it the latter obtained water power for a saw-mill.

The plaintiff's land was a part of a tract of thirty-two acres which in 1852 was owned by Enoch Cade, who was then the owner also of other land adjoining. An old saw-mill, dilapidated and out of use, stood at or near the site afterwards occupied by the plaintiff's mill. The defendant's lands, at that time, and his lands farther up the stream, upon which it separated into two channels, were owned by John Miller. In the year stated, Cade brought an action against John Miller in the Court of Common Pleas of Bedford county, to recover damages for a diversion of the water of Wills creek. This action was settled by the following compromise agreement, executed by Miller and wife and Cade, with an acknowledgment before a justice of the peace, and recorded on the day after its date:

" Whereas an action on the case, in the Court of Common Pleas of Bedford county, has been instituted to No. 14 of February Term 1852, and is now pending, by and between Enoch Cade and John Miller, both of Londonderry township in said county, regarding the diverting of the waters of Wills creek from their natural channel over and upon the land of said Cade, viz., part of tract warranted in the name of Peter Smith being thirty-two acres and sixty-one perches, situated in said township. . . . . Now, therefore, for the purpose of settling all dispute regarding the same: Know all men by these presents that we, the said Miller and Catharine, his wife, and the said Cade, do covenant, agree and bind ourselves as follows: The said Cade, his heirs, executors, administrators or grantees, are to use and enjoy a water right or power for two wheels of any capacity and size he or they may see proper to erect on the land owned by him as above described, or the piece he has lately bought from Michael Carpenter and wife, adjoining the other to the east, without let, hindrance or diversion by channels now existing or by new channels on any land owned by said Miller, or by any hindrance or diversion whatever by the said Miller, his heirs, executors, administrators or grantees.

Statement of Facts.

In order to enjoy which, said Cade is not to allow any unnecessary waste of water. Further, at all times when there is a surplus of water in said creek, over and above what may be needed for the full, free and uninterrupted enjoyment of the said two wheels of the said Cade, in manner aforesaid, then the said Miller is to have, use and enjoy water sufficient for the full and free use of the saw-mill now owned by him about sixty or seventy yards southwesterly from the said bridge, or of anything else he may put there not requiring, using or diverting more water than would be necessary for the enjoying the said saw-mill as it now exists. In order to enjoy which, said Miller is not to allow any unnecessary waste of water. The rest of the said water of said creek, over and above the said water said Miller is to use in manner aforesaid, is to be used and enjoyed in any manner deemed proper by said Cade. Said Miller is to have a flood-gate erected at the mouth of his head-race, and shut the same down tightly and securely when the said creek does not furnish more than enough for the said two wheels of the said Cade as aforesaid, and also at all times else when he is not using his own mill, and at all times, is not to interfere in any way with said two wheels as aforesaid, or the rest of said water over and above his own belonging to the said Cade as aforesaid. And for the true performance of all these agreements and covenants, we mutually bind ourselves, our heirs, executors, administrators and grantees by these presents. Witness our hands and seals this eighth day of July, A. D. 1852."

By deed dated April 9, 1864, Cade conveyed the two tracts mentioned in the foregoing agreement to James C. Devore. The deed made no reference to that agreement, or to the rights thereby granted, but contained the usual clause mentioning " ways, waters, water-courses," etc., among the appurtenances of the land conveyed. On November 21, 1868, Devore conveyed the same lands to Edward Manley and Daniel O'Donnell, describing them together, by metes and bounds, as one body containing forty-four acres and five perches. In the deed to Manley and O'Donnell the words " waters, water-courses " were omitted, and there was no reference of any kind to water rights. That part of the thirty-two acres, mentioned above as owned by the plaintiff, was conveyed to him and one Cook by

deed from Manley and the heirs of O'Donnell, by a deed dated April 16, 1881, which made no mention of any agreement or rights respecting waters. By subsequent conveyances, the plaintiff became the sole owner of said nine acres.

Cade never erected a mill on his land after the agreement of July 8, 1852, and none was erected until about 1880 or 1881, after the plaintiff and Cook had contracted for the purchase of their land, when the grist-mill above mentioned was constructed, with one turbine wheel.

The testimony tended to show that the defendant had caused the diversion, from the channel through the plaintiff's land and into the channel passing through his own land, of a larger quantity of water than was permitted by the agreement of 1852, and that, in consequence of such diversion, there was not a sufficient flow of water in the former channel to keep the plaintiff's mill running with one wheel. Testimony was given on both sides of the case respecting a claim by the defendant of twenty-one years' adverse user of the water, in the manner complained of, and an allegation by the plaintiff that the defendant Miller had done acts and made declarations estopping him from disputing the plaintiff's title to the rights granted by John Miller to Enoch Cade.

At the close of the testimony, the court, BAER, P. J., charged the jury submitting to them the questions of fact raised by the testimony, and reserving for consideration and ruling " after the verdict, on proper motion filed, on the facts appearing on the face of the deeds and the agreement of July 8, 1852," four points presented by the defendants, as follows :

3. The agreement of July 8, 1852, is merely an executory agreement, with mutual covenants ; and, by its terms, Cade was bound to use the water by the erection of a mill, and not having done so, no mill having been ever erected or flood-gates put in, the contract failed and is inoperative and gives no rights to the plaintiff in this suit.

4. There being no express mention of the covenant, agreement or contract, or transfer of Cade's rights under it, if he had any, to J. C. Devore, O'Donnell and Manley and Horn, in the deeds of conveyance, the plaintiff would have no right or title to the water under said agreement.

5. The conveyance of Manley and O'Donnell to Horn does not mention water, water-courses, ways or anything except appurtenances, and under that word no right could pass to the plaintiff, by virtue of that agreement, to water not held and used as an appurtenance at the time of the conveyance of the land.

6. The conveyance of Manley and O'Donnell to Horn for nine acres of the land to which it is claimed the agreement of 1852 is appurtenant, to wit, thirty-two acres, would not operate as a conveyance of the water right to the plaintiff, the same being appurtenant, if at all, to the whole. The privilege was an entire thing and cannot be divided. A conveyance of parts of the land in parts, is an increase of the burden of the easement and destroys it, it not having been made to appear that there is but one mill-seat on the land.

The jury rendered a verdict in favor of the plaintiff for $52. Motions for a new trial, and for judgment for the defendant non obstante veredicto, having been argued, the court, BAER, P. J., filed an opinion which, after reciting the facts, proceeded as follows:

In none of the deeds is there more than a mere description and conveyance of land by metes and bounds with the appurtenances. There has been no conveyance of the premises as a mill or mill-seat, and there is no evidence to show that the easement claimed was or is necessary to the reasonable enjoyment of what was expressly granted. The easement is not a part of the granted premises, and there is no evidence to show that at the time of the grant the easement was apparent, visible, or seemed to be necessary to the complete enjoyment of the premises.

Parties are presumed to contract with reference to the condition of the property as it exists at the time of the contract or conveyance, unless by the contract made to otherwise appear. Whatever belongs to the thing granted as parcel thereof will pass with a grant of the land, and is included under the name appurtenances. Whether a certain right or easement is appurtenant, depends upon the condition of the land at the time of the conveyance, and how far the right is necessary to the enjoyment of the property as granted. If the easement was enjoyed,

at the time of conveyance, in connection with the land granted, it will pass to the grantee. In this case, it clearly appears it was not so enjoyed at the time of contract and conveyance, and it is not necessary to the complete enjoyment of the land as described and expressly granted.

In our view of the law on the question reserved, the easement did not pass to the grantee by virtue of said deeds, and, therefore, the plaintiff had no cause of action ; wherefore, the motion for a new trial is now overruled and judgment is now ordered to be entered for the defendants, upon paying the jury fee, notwithstanding the verdict.

A re-argument upon the motion for judgment having been heard, the court, BAER, P. J., filed a second opinion, as follows :

The able argument of counsel for plaintiff leads me to consider whether I may not have totally misapprehended the case ; if their views are correct, I did to some extent misapprehend.

I ruled the question as involving the existence of an easement, etc. They argue, first, there was no easement; second, the case is theirs, on the general principle that the conveyance or grant carried the stream with the land, etc. They do not seem to dispute the legal principles stated, but say the conclusion does not follow because that other principles are involved.

The principles of law stated in the former ruling need not be re-stated. An easement is defined to be a privilege " without profit, which the owner of one neighboring tenement hath of another, existing in respect of their several tenements, by which the servient owner is obliged to suffer, or not to do something on his own land, for the advantage of the dominant owner : " 10 Am. & E. Encyc. of Law, 139. This definition embraces an affirmative and a negative easement. A negative easement is where the owner of the sevient tenement is prohibited from doing something upon his own land which he otherwise might do. An affirmative easement is where the owner of the servient tenement must permit some act to be done thereon by the owner of the dominant estate. In the case at bar, the easement or privilege, if anything, is a negative easement. It is a servitude nevertheless, binding upon the land of the defendant, and is an interest therein in favor of Enoch Cade and any person holding under him by grant.

Opinions of Court below.

The owner of this servient tenement can be compelled to use it in a particular way, so as to take no more water from the stream, at the point of divergence, than was provided for by the contract made between Enoch Cade and John Miller. Such an easement could only pass by grant: Washburn on Easements, 19, 605, 623, 626. If such an easement becomes appurtenant to an estate, it follows it and every part of it, into whosesoever hands it may come, provided the burden is not increased.

The contract between Cade and Miller covered a tract of thirty-two acres and a contiguous parcel, of which nine acres only came by grant in the hands of the plaintiff. "Where a specific parcel of land is cut out of a larger one held by a grantee, and it is described by metes and bounds, in such a case nothing passes as parcel of the granted premises which was matter of ease and convenience only, except what is included within the bounds expressed in the deed:" Washburn on Easements, 36. The easement originally created by grant was not extinguished by grant, nor, as the jury found, by adverse user. It therefore still exists, for the benefit of any one who can lay claim to it under a grant.

If the estate to which the easement was appurtenant was so conveyed as not to carry the easement with it, then it is immaterial in this case what became of it. For, unless it passed to the plaintiff by virtue of the grant to him of nine acres as part of the Cade tract, with metes and bounds described with no reference to the easement, which was not apparent or in use in connection with the premises granted or with the whole, of which it was a part, he can have no standing to raise any question about it.

It is claimed by the plaintiff that whether it passed to him by the grant or did not pass, is only a question between him and his vendors, and not one in which the defendant has any interest; for, as the jury decided the question of adverse user against the defendant, the easement continued in favor of Enoch Cade and those holding under him. There is force in this position. But, under the contract, nothing else appearing, the defendants, and those under whom they claim, could use the stream as it was being used at the date of the Cade-Miller contract, against all the world except Enoch Cade and those holding under him

by grant of the easement. Levi Rizer is the present holder under Enoch Cade of the greater part of the Cade tract, covering the same stream lower down. If he also, on a like general grant, or one conveying the easement, could invoke the provisions of the Cade-Miller contract and claim a two-wheel power, it is manifest from the location of the party that the burden would be increased.

In the light of the principles of law referred to and cited in our former ruling and those additionally relied on in this opinion, we are constrained to adhere to the former conclusion, that the easement did not pass by the grant, however defective the reasoning then and now may be.

This brings us to a consideration of a further question raised in re-argument. The plaintiff further argues that the right to the stream passed with the land by the deed, and that the question of easement is not involved. It is undoubtedly true that the natural stream running through the plaintiff's land is an incident annexed by law itself to the land; it is a part of the freehold, and it passed with the grant as land. He is entitled to the use of the water flowing in the stream and over his land, in its natural current, without diminution or obstruction, and no upper proprietor has a right to diminish the quantity, which will, according to the natural current flow to a proprietor below.

The stream severed above the land of Enoch Cade. Whether the division or severance was natural or artificial, or whether, below the point of severance, the Cade or the Miller branch of the stream was the original natural current of the stream, is not clear and is not found by the jury. But from the evidence, and the face of the contract between Enoch Cade and John Miller, it is apparent that the flow over Cade's land was not, at the time the contract between Cade and Miller was made, at all seasons sufficient to run two wheels; for the contract provides that a gate should be erected at the point of diversion, on the Miller branch, and should, during low stages of water, be closed so as to prevent the full flow of the Miller branch of the stream; thus showing that the flow in the Cade stream, at the date of the contract, was not sufficient to run two wheels. The easement was created to give him enough.

The flow of the stream, on the evidence, was at the time of

trial as it was at the date of the contract, and by his grant the plaintiff has now the use of the stream as the flow then was; and, without a grant of easement, he is entitled to no more, in the absence of proof to satisfactorily show that the natural flow was at any time greater.

I am satisfied on due consideration with the former conclusion, though the reasoning then and now may be defective.

The third and fourth points reserved are now negatived; and, on the fifth and sixth points reserved, we overrule the motion for a new trial and direct judgment as entered for the defendant, non obstante veredicto, in January, 1890, to stand.

Thereupon the plaintiff took this appeal assigning for error:
1. The reservation of the defendants' points.
2. The entry of judgment for the defendants.
4, 5. The affirmance of the defendants' fifth and sixth points.

*Mr. John M. Reynolds* (with him *Mr. E. F. Kerr* and *Mr. R. C. McNamara*), for the appellant:

1. The court misconceived what was essential to constitute a valid reservation; or, if the reserved question were properly stated, overlooked the bounds within which a decision of the cause should have been made. As the third and fourth points of the defendants were finally negatived, it will be necessary for us to consider only the fifth and sixth. An affirmance of these points, as correct statements of the law, did not involve or justify the entry of judgment for the defendants. To enter that judgment, required the assumption of other facts than those appearing in the reservation, which we have a right to presume are negatived by the verdict. The court was not justified when passing on these points, in assuming that at the time of the conveyance by Manley and O'Donnell's heirs, the water in question was not held and used as an appurtenance to the land, or that the flow of water through the plaintiff's land was an appurtenance or easement only, and not a part of the land itself.

2. Not only the point of law reserved, but the facts on which it arises, must be distinctly stated in the reservation: Fayette City v. Huggins, 112 Pa. 1; Patton v. Railway Co., 96 Pa. 169; Inquirer Printing Co. v. Rice, 106 Pa. 623; Buckley v. Duff,

Arguments.

111 Pa. 223. The reservation must not be of a mixed question of law and fact: Commonwealth v. McDowell, 86 Pa. 377; Winchester v. Bennett, 54 Pa. 510; and, in passing on it, the testimony cannot be considered, and conclusions drawn therefrom: Central Bank v. Earley, 113 Pa. 477; Henry v. Heilman, 114 Pa. 499. A point of law cannot be reserved properly, unless, if held in one way, the court would be bound to give binding instructions to the jury: Wilde v. Trainor, 59 Pa. 439. But, if the reservation was in such form as to authorize judgment, the conclusions reached were not proper. They rested on unauthorized assumptions made by the court. Even assuming that the right to the water, under the agreement of 1852, was a mere easement, the rulings of the court were erroneous.

3. An easement created by grant and annexed to land, will not be lost by mere disuse, an adverse use being necessary to destroy it: Erb v. Brown, 69 Pa. 216; Washburn on Easements, 3d ed., 670; 6 Am. & E. Encyc. of Law, 148; Lindeman v. Lindsey, 69 Pa. 93; Bombaugh v. Miller, 82 Pa. 203; Demuth v. Amweg, 90 Pa. 181; and, on a conveyance of the land, it will pass by or even without the word appurtenances: Washburn on Easements, 35. But this was not a mere easement. The right to the flow of water in its natural course is parcel of the inheritance: Angell on Water-courses, 6th ed., 96; Wheatley v. Baugh, 25 Pa. 528; Wheatley v. Chrisman, 24 Pa. 298; McCoy v. Danley, 20 Pa. 85. An easement is not destroyed by the mere subdivision of the dominant land: Hills v. Miller, 3 Paige 254 (24 Am. Dec. 218); Story v. Railroad Co., 90 N. Y. 122 (43 Am. Rep. 146); Dawson v. Insurance Co., 15 Minn. 136 (2 Am. Rep. 113); Watson v. Bioren, 1 S. & R. 227; Private Road, 1 Ashm 417; 6 Am. & E. Encyc. of Law, 152; Outerbridge v. Phelps, 13 Abb. N. C. 117; Kirkham v. Sharp, 1 Wh. 323; Lewis v. Carstairs, 6 Wh. 193; Evans v. Dana, 7 R. I. 306. That such division would increase the burden, in this case, does not appear.

*Mr. W. M. Hall, Jr.*, (with him *Mr. W. M. Hall*), for the appellees:

1. The facts, upon which the reserved points were based, were found in the deeds and agreement under which the plaintiff claimed, and were undisputed. The court held that

the effect of the agreement of 1852 was the grant of an easement to Cade. It was incumbent on the plaintiff to show that this easement was apparent at the time when the deed of Manley and O'Donnell's heirs was made, and that it was necessary to the land granted by that deed. This he did not do. There were two branches of the case: (a) The question of adverse user, on which there was a verdict for the plaintiff; and (b) the question whether the plaintiff had any cause of action under the agreement of 1852 and his title deeds. The latter was a pure question of law. The court could not have given binding instructions on it, as the former question was one of fact, upon which there might readily have been a verdict for either party.

2. The language of the agreement of July 8, 1852, amounts to a covenant, simply, mutual, dependent, executory, with no performance by either party. Such a covenant does not run with the land: Hurd v. Curtis, 19 Pick. 459; Morse v. Aldrich, 19 Pick. 449; 2 Washburn on Real Prop., 13; Van Rennsalaer v. Bonesteel, 24 Barb. 365; Plymouth v. Crum, 19 Pick. 183; Bronson v. Coffin, 108 Mass. 175. While the benefit of a covenant running with land will pass with the land to which it is incident, the burden will adhere exclusively to the original covenantor, unless the relation of privity of estate or tenure subsists, or is created, between the covenantor and covenantee when the covenant is made: Blount v. Harvey, 6 Jones (N. C. L.) 186; Spencer's Case, 1 Sm. L. C. 161; Lau v. Mumma, 43 Pa. 267. Moreover, we maintain that it was incumbent on Cade, or his successors, to erect the wheels referred to in the agreement, within a reasonable time, and as they did not do so, the agreement became dead.

3. If the agreement did create an easement in favor of Cade's estate, such easement did not pass to the plaintiff. In the division of an estate only such easements pass by implication, without express terms, as are continuous, apparent, and necessary for the enjoyment of the parcel granted: McCarty v. Kitchenman, 47 Pa. 243; Griffiths v. Morrison, 106 N. Y. 165; Reniers v. Young, 38 Hun 335; Root v. Wadhams, 107 N. Y. 384. It is not to be presumed that O'Donnell's heirs and Manley, in granting nine acres, intended to grant an exclusive right to this easement, to the detriment and burden of

the remainder of their land, especially as they used no words of conveyance of water, water-rights or water-courses: Washburn on Easements, 49; Grant v. Chase, 17 Mass. 443; Parson v. Johnson, 68 N. Y. 62 (23 Am. Rep. 149); Palson v. Ingram, 22 S. C. 541; Maynard v. Esher, 17 Pa. 222. If the owners of the other Cade lands may erect a two-wheel power, the burden would be increased and this destroys the easement: Washburn on Easements, 32; Caldwell v. Fulton, 31 Pa. 475. Should this court reverse, no judgment can be entered for the plaintiff, as we have taken exceptions to the rulings of the court below: Patton v. Railway Co., 96 Pa. 169.

OPINION, MR. JUSTICE CLARK:

This action was brought to recover damages for the diversion of the water of Wills creek, from the channel through which the plaintiff supplied the wheel of his grist-mill, near Hyndman, in Bedford county. It appears that the waters of· Wills creek divide at a point about a mile above the plaintiff's land, (whether from artificial or natural causes does not appear,) and thence proceed in two channels, one by the plaintiff's mill, and one by the defendants' mill, to a point a short distance below both mills, where a junction is again effected. It also appears that, in the year 1852, John Miller owned the land now owned by the defendants, and also the land adjoining, upon which the stream divides, now owned by Jacob Evans, and that Enoch Cade was the owner of some forty-two acres in two adjoining parcels, one containing thirty-two acres, more or less, part of the New Bridgeport tract; the other containing about nine acres, known as the Carpenter lot.

The appellant's contention is, that the extent of his right is fixed by an agreement dated July 8, 1852, between John Miller and Enoch Cade, who were thus the predecessors in title to the respective premises involved in this controversy. In the year 1852, an action was pending in the Court of Common Pleas of Bedford county, in which Enoch Cade was plaintiff and John Miller defendant. The action was brought to recover damages for the diversion by Miller of the waters of Wills creek to his saw-mill, on one channel of the stream, to the prejudice of the right of Cade, who was the owner of a mill-site, on the other channel. The matters in controversy in this suit were settled according to the terms of the agreement mentioned.

By this agreement it is provided, in substance, as follows: Cade, "his heirs, executors, administrators or grantees," were conceded the right to use and enjoy the "water right or power" for two wheels, of any capacity and size he or they might see proper to construct, on either of the lots mentioned as belonging to him, "without let, hindrance, or diversion by said Miller, his heirs, executors, administrators or grantees." When there was any surplus water, "over and above what may be needed for the full, free, and uninterrupted enjoyment of the two wheels," Miller was to have thereof what was sufficient for the full and free use of his saw-mill, "not requiring, using, or diverting more" than was necessary for that purpose; the rest of the water of said creek, and there was to be no unnecessary waste of the water by either party, was to be used and enjoyed by Cade. The concluding clause of the contract is as follows: "Said Miller is to have a flood-gate erected at the mouth of his head-race, and shut the same down tightly and securely when the said creek does not furnish more than enough for the said two wheels of said Cade, as aforesaid, and also at all times else when he is not using his own mill, and at all times is not to interfere in any way with said two wheels, as aforesaid, or the rest of said water, over and above his own, belonging to said Cade as aforesaid."

There is no dispute as to the proper construction of this agreement; there is no ambiguity of expression, or uncertainty of meaning alleged, but the legal effect of it is what is most in dispute. It is certainly clear that the suit pending in 1852 was for redress of injuries for an invasion of Cade's right as a riparian owner. The agreement was made in adjustment of Cade's right as such. Miller had no right, by artificial means, to withdraw the water from Cade's use. He was restricted in his use and enjoyment of the water to the natural flow, and the foundation of the action was that the natural condition of the stream had been interfered with. The agreement was, virtually, a recognition of the superior claim of Cade; for his right was distinctly recognized and entitled to a preference, and was intended to be protected under the terms of the agreement. But the right which was thus protected was, nevertheless, his right as a riparian owner, the extent of which, in view of all the facts and circumstances, was declared and established

between the parties, their heirs, executors, administrators and assigns, in the terms of the contract.

The right to reasonable use of water in its natural flow, without any diversion of it from its ordinary channel by artificial means, is incidental to the ownership of the land through which it flows, and the extent to which it may be used and applied affects the use and consequent value of the land itself. These covenants, therefore, relate to the land of the respective parties, or to the enjoyment of the land which they had in possession in fee, and were to be performed upon and in connection with its use and enjoyment. The present parties litigant have, in part at least, the same lands respectively to which the agreement relates, also in fee. The covenants were by the covenantors for the mutual benefit of themselves, their heirs, executors, administrators or grantees, and the present owners, holding the land by conveyance from the covenantors respectively, under the law of this state are in privity of estate with them respectively. There was no privity of estate between the contracting parties, but the covenants, being in adjustment of their respective rights to the use of the water of Wills creek, must be construed as a mutual benefit to, and not as a burden upon, the lands of either.

We are of opinion, therefore, that the covenants in question run with the land, and define the rights, not only of the parties thereto, but of their respective heirs and assigns. To the general rule that between the covenantor and covenantee there must be such privity of estate as would formerly have given rise to the rule of tenure, there are in this state, and perhaps in some of the other states, well-recognized exceptions. Covenants capable of running with an assignment of a present estate in land may, it seems, have that capacity in certain cases, although no estate passes between the covenantor and covenantee at the time of covenant made. The obligation of contracts is, in general, limited to the parties making them: where privity of contract is dispensed with, there must ordinarily be privity of estate; but justice sometimes even requires that the right to enjoy such contracts should extend to all who have a beneficial interest in their fulfilment, not to impose a burden upon an ignorant and innocent third person, but to enable purchasers of land to avail themselves of the benefit to which

Opinion of the Court.

they are in justice entitled. The character of a covenant of this kind must depend upon the effect of the entire agreement of which' it is a part, and, where the benefit and the burden are so inseparably connected that each is necessary to the existence of the other, both must go together; the liability to the burden will be a necessary incident to the right to the benefit: See note to Spencer's Case, 1 Sm. L. C. 174. It was upon this ground that, in Coleman v. Coleman, 19 Pa. 100, a covenant entered into by the owners of the estate that a part only should be divided, and a part "remain together and undivided as a tenancy in common," was held to run with the land, and to bind not only the contracting parties, but their heirs and assigns, although not named in the contract, and therefore to constitute a bar to an action of partition upon the part undivided instituted by the heirs at law of one of the parties. Although there was not, in any proper sense, as to the undivided mine hills, a privity of estate between the tenants in common, yet, as the covenant pertained to and was attached to the realty, providing for the manner of its future enjoyment, it was styled a real covenant; and, being for the mutual benefit and advantage of all, it was held to run with the land.

In Carr v. Lowry, 27 Pa. 257, there was a grant of a mere easement, the right to cut and keep up a tail-race through Carr's land for the benefit of the adjoining lands of Lowry, to which was annexed a covenant of Lowry, his heirs and assigns, to keep the race timbered, planked, and covered with earth, and to be held for damages, etc. The burden imposed was necessarily incident to the enjoyment of the benefit, and it was held that the contract defined the duties which ought to be performed by whoever should be the owner of the mill for the benefit of which the easement was created. "We cannot presume," says Mr. Justice LOWRIE, "that he (Lowry) intended to bind his personal representatives to such duties. In the natural order of affairs, they accompany the ownership of the property to which they relate, and therefore in the present case ought to be performed by the heirs or assigns of Lowry, if they claim under the title then acquired by him. The relation between Carr and Lowry on which the duty depends, was dissolved by Lowry's death, if not before, and his administratrix can be charged to answer only for a breach in his lifetime."

So  also  in  Lindeman v. Lindsey, 69  Pa. 93,  owners on op-posite sides  of  the Conodoquinet  creek  agreed  jointly to  erect a  dam,  each  to  have  the  use  of  half  the  water,  with  a covenant for  themselves,  their  heirs  and  assigns,  to  repair  and  rebuild; and  this  covenant  was  held  to  run  with  the  land,  the  dam hav-ing  been  constructed  for  the  mutual  benefit and  advantage of the  parties,  with  direct  relation  to  the  enjoyment and  use of the  land.   " When, therefore," says  Mr. Justice  SHARSWOOD, " they  enter  into  an  agreement  to  erect  such  a  dam, with  a covenant  for  themselves,  their  heirs  and  assigns,  to  repair, or rebuild  it  if  necessary,  it  is  not a  personal  covenant  merely, but  runs  with  the  lands  of  the  respective  proprietors, and  the stipulations  contained  in  such  agreement,  in  respect to  the  en-joyment  of  the  water  power  created  by  the  dam, form  the  basis of  their  respective  rights.   It  is  sufficient  to  refer to  Jamison v. McCredy,  5  W. & S. 129,  as  a  case  entirely  parallel,  if  not in  point.   If  the  instrument  contain  the  grant  of  an  easement or  privilege  to  either  party  in  the  land  or  the  water, against such  a  grant  there  is  no  statute  of  limitations  without actual, hostile,  and  adverse  possession,  and  certainly  no  prescription or  presumption  from  mere  non-user.   Nothing  less  than  an absolute  denial  of  the  right,  followed  by  an  enjoyment  incon-sistent  with  its  existence  for a  period  of  twenty-one  years  or more,  can  amount  to  an  extinguishment  of  it."   The  effect of the  agreement  of  1852  was  therefore  to  adjust  and  fix  the rights  of  the  parties  thereto,  and  of  their  heirs  and  assigns. It  is  of  no  consequence  that  in  the  deeds  constituting  the  chain of  title from  Cade  to  Horn  no  mention  of  this  agreement  is made,  or  of  the  rights  accruing  therefrom.   The  right  passed as  appurtenant to  the  land.   As  the  assignee  of  the  land from Cade  in  fee,  Horn  has  a  right  to  enjoy  the  benefit  of  the  con-tract  which  runs  with  it.

This  action  is  trespass  upon  the  case,  for  diversion  of  the water  to  the  prejudice  of  the  plaintiff's  rights  as  a  riparian owner,  which,  in  view  of  the  alleged  previous  artificial  diversion of  the  waters  of  the  stream,  were  fixed  and  determined  by  the agreement  of  1852.   Trespass  was  the  proper  remedy.   The agreement  of  1852  established  the  rights  of  the  parties,  and  the covenants  were  to  that  effect  merely.   The  agreement  was equivalent  to  a  grant;  whatever  may  be  conveyed  by  grant

Opinion of the Court.

may be secured by covenant in this form. No one has ever supposed before, as was said in Lindeman v. Lindsey, supra, that upon a grant by deed of an easement or privilege upon land, or land covered with water, by one man to another, the remedy for a disturbance of such easement or privilege was an action of covenant upon the deed. Take a common case of the grant or reservation of a right of way. Surely an action on the case may be maintained by the grantee for the obstruction of it, as well against the grantor and those claiming under him as against strangers. The books are full of such cases, in which no such point was made; citing Watson v. Bioren, 1 S. & R. 227; Kirkham v. Sharp, 1 Wh. 333; Jamison v. McCredy, 5 W. & S. 129; Van Meter v. Hankinson, 6 Wh. 307; Ebner v. Stichter, 19 Pa. 19.

It is true that Horn is the assignee of part only of the forty-four acres held by Cade, to which this covenant is applied, but his rights as a riparian owner are in no way impaired by this. If, after the water leaves the tail-race of his mill, others avail themselves of its power, we cannot see how this can affect Miller. But non constat that any other wheel will be placed on any other part of Cade's tract. One thing is certain, that the mere apprehension of this cannot excuse Miller for diverting the water of the stream, in violation of the contract. It will be time enough to provide for this contingency when it happens.

We are of the opinion that the learned judge of the court below erred in entering judgment for the defendant, non obstante veredicto.

> The judgment is therefore reversed, and judgment is now entered on the verdict for the plaintiff for $52.