## Lerner v. Poulos, Appellant.

Argued November 19, 1962. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused November 26, 1963.

*Franklin Poul,* with him *Martin Greitzer, Alan J. Davis,* and *Takiff & Bolger,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellants.

*James L. Stern,* with him *Markovitz & Stern,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, October 9, 1963:
This is an appeal from the decree of the court below granting a preliminary injunction after hearing.

Horn and Hardart Baking Company owned a parcel of land in Philadelphia at the southeast corner of Market and Second Streets, with approximate frontages of 56 feet on Market Street and 75 feet on Second Street. The corner portion of lot which extended 32 feet on Market Street and about 48 feet on Second Street was used for parking and was vacant ground, except for two cinder block structures, or sheds. The remaining part of the parcel contained a restaurant, an "L" shaped building, which abutted the east and south sides of the lot. The building had a frontage of 24 feet on Market Street and 27 feet on Second Street, and was known as 134-136 Market Street and 5-7 Second Street. The vacant lot was numbered 138-140 Market Street. The building had been used as a restaurant and the two concrete block sheds were built on the lot adjacent to the building. One had been used as a coal bin for the building and the other housed a conveyor which was accessible through an opening in the wall and was used to carry dirty dishes to the basement of the restaurant building.

James Poulos, one of the appellants, on learning the property was for sale by Horn and Hardart, told Albert Young about it. Horn and Hardart wanted to sell the parcel as a unit and Poulos and Young agreed to purchase the entire property for $60,000. Poulos was interested in the corner piece of land only, as he

wanted to erect a diner on the corner. Young and Poulos agreed to a division of the property and Horn and Hardart, by deed dated January 12, 1961, conveyed the restaurant building and the ground it occupied to Albert A. Young and Elizabeth Young, his wife, and the remaining part of the parcel, including the cinder block sheds, was conveyed to James Poulos and Vera Poulos, his wife, in accordance with the agreement of Poulos and Young, each paying one-half of the $60,000 purchase price.

The Youngs sold their portion of the property to Lewis E. Lerner and Edith Lerner, his wife, by deed of April 16, 1962, pursuant to an agreement of February 1, 1961. The Lerners, doing business as Lerner's Inc., a corporation, commenced the operation of a restaurant on the premises in the spring of 1961.

About a year later Mr. Poulos secured the necessary funds and prepared to proceed with his plan to erect the diner. He engaged Peter Manos, another appellant, in the summer of 1962, to excavate, lay the foundation and to prepare the lot for the installation of the diner. Manos, in the course of the work, demolished the shed used as a coal bin[1] and set about to remove the other shed and discovered it housed a conveyor and machinery to operate it.

This action was instituted to prevent the demolition of the structure, the appellee claiming the right to have the building which housed equipment essential to the operation of the restaurant on the appellant's land as an implied easement.

The Chancellor entered a decree granting the preliminary injunction. This appeal followed.

Appeals are expressly allowed by statute from the grant or refusal of a preliminary injunction. Act of

---

[1] The demolition of the coal bin is not here in issue as it was not being used and the decree of the court was limited to the shed housing the conveyor.

February 14, 1866, P. L. 28, §1, 12 P.S. §1101; Act of June 12, 1879, P. L. 177, §1, 12 P.S. §1102: *1621, Inc. v. Wilson,* 402 Pa. 94, 166 A. 2d 271 (1960). However, as we said in *Lindenfelser v. Lindenfelser,* 385 Pa. 342, page 343, 123 A. 2d 626 (1956): "Our uniform rule is that, on an appeal from a decree which refuses, grants or continues a preliminary injunction, we will look only to see if there were any apparently reasonable grounds for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable. [Citing cases.]" See also, *Williams v. Bridy,* 391 Pa. 1, 136 A. 2d 832 (1957); *Parker v. Philadelphia,* 391 Pa. 242, 137 A. 2d 343 (1958); *Herman v. Dixon,* 393 Pa. 33, 141 A. 2d 576 (1958); *American Eutectic Welding Alloys Sales Co., Inc. v. Flynn,* 399 Pa. 617, 161 A. 2d 364 (1960).

Appellees claim an implied easement to occupy the shed on the land of Poulos. The cinder block building is approximately 70 inches by 90 inches and occupies about 43 square feet. This area of Poulos' land is used exclusively by the appellees. Poulos has plans to occupy this area and, in fact, the entire area of his parcel of land, by the diner he intends to erect. The determination of the existence or creation of an implied easement depends upon the intention of the parties as inferred from the circumstances existing at the time of the severance of the tract: *Spaeder v. Tabak,* 170 Pa. Superior Ct. 392, 85 A. 2d 654 (1952); *Hoover v. Frickanisce,* 169 Pa. Superior Ct. 443, 82 A. 2d 570 (1951); *DePietro v. Triano,* 167 Pa. Superior Ct. 29, 74 A. 2d 710 (1950); *Philadelphia Steel Abrasive Company v. Gedicke Sons,* 343 Pa. 524, 23 A. 2d 490 (1942). See also Restatement, Property, §476.

Horn and Hardart erected the shed and installed the conveyor to remove the dirty dishes from the first floor to the basement at a time when it owned the entire parcel of land now owned by Lerner and Poulos. The installation of this conveyor was a convenience and the record in this case discloses that it would be necessary to remove about two tables in the restaurant, or the space that eight people might occupy, if the conveyor were moved to within the building. The approximate cost of such work of removal and installation within the building would be $4,000.

At the time of the purchase of the property by Poulos and Young, the appellees' predecessor in title, which was the time of severance, Poulos and Young agreed to the division of the property. The chancellor would not permit the introduction of this agreement into evidence as it was not recorded and Young's successor in title had no notice of it. The chancellor based his ruling on the familiar rule that an agreement for the sale of property is merged in the deed conveying the land. This ruling was error since the purpose of the introduction of the agreement dividing the land, was to show the intent of the parties at the time of the severance of the land. Here there was a definite determination to deal with the property in a precise manner. The relevant portion of the agreement (dated September, 1960) provides that: "A survey shall be obtained of all of the property herein described and it is the understanding of the parties that Lot 138 Market Street is fifty-six (56′) feet in depth and that Lot 140 Market Street is approximately forty (40′) feet in depth. The parties are not certain of these measurements which are approximate and in any event, POULOS' lots are to run from the Market Street frontage to the permanent wall of No. 7 South Second Street. The east boundary of the Poulos lot is the permanent wall of the building at 136 Market

Street. The deeds shall be prepared on the basis of the survey and any costs in connection therewith shall be borne equally by the parties. The lots being deeded to POULOS shall not include the walls of the buildings retained by YOUNG on Market Street and Second Street, but POULOS shall have the right to build up to said walls and use the same as party walls in any construction which POULOS may later undertake upon his lots. The shed or sheds on part of Lots designated as 138 and 140 Market Street are on ground to be taken hereunder by POULOS and are not considered part of the buildings on the Second Street property or the Market Street property to be retained by YOUNG."

The parties in this case dealt specifically with the matter which the appellees now attempt to show by implication. Here there is no need to imply the intention of the parties from the circumstances surrounding the severance of the property, since the parties themselves, through the division agreement, dealt specifically with the sheds and the boundary line of the property. The chancellor, by refusing to receive the agreement in evidence, disregarded the express intention of the parties which was determinative of this action. Since there was no basis for granting the preliminary injunction on the ground of an implied easement, it is evident that no grounds existed for the grant of the injunction. There was, in fact, legal error. We said in *Coffin v. Old Orchard Development Corp.*, 408 Pa. 487, page 494, 186 A. 2d 906 (1962): "Nor could there be an easement established. We said in Clements v. Sannuti, 356 Pa. 63, 51 A. 2d 697 (1947), at page 65: 'It is the traditionally established doctrine that there can be no easement, no incorporeal right, binding the servient tenement, the effect of which would be to deprive its owner of the right of use or possession thereof. "An easement is a liberty, privi-

lege or advantage which one may have in the lands of another without profit. . . . It may be merely negative . . . and may be created by a covenant or agreement not to use land in a certain way. . . . *But it cannot be an estate or interest in the land itself, or a right to any part* of it" (Italics supplied): Slegel v. Lauer, 148 Pa. 236, 240. "An easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special *purpose not inconsistent with a general property in the owner*": Riefler & Sons v. The Wayne S. W. P. Co., 232 Pa. 282, 289. See also Saxton v. Mitchell, 78 Pa. 479, 483; Smith v. Dutton, 4 Phila. Reports 73, 74; Restatement, Property, Servitudes, section 450.' "

The relevant material facts in the instant matter, determinative of the legal aspect of the case, are clear and undisputed. Here, Horn and Hardart, as the common grantor, should not be considered as having made two conveyances to unrelated grantees. Young and Poulos made their own agreement and Horn and Hardart, as a convenience to the grantees, conveyed to them as they requested the grantor (Horn and Hardart) to do. The deeds were prepared in accordance with the survey submitted by Young and Poulos.

In addition to the agreement by Young and Poulos in their division of the property, the deed from Horn and Hardart to Poulos contains the description in accordance with the agreement and survey, giving the property containing the cinder block buildings to Poulos. The deeds, containing the description as each desired, were recorded and they, with the written agreement for the division of the property by Horn and Hardart, grantor, in accordance with the grantees' desires clearly eliminate any implication as to the use of the concrete block building and, accordingly, the chancellor did not have any apparently reasonable grounds for his action in granting the preliminary in-

junction, and it is plain that no grounds existed for the establishment of an implied easement, which would be necessary to granting an injunction. It is plain that no such ground existed and the rules of law relied on were clearly inapplicable. *Lindenfelser*, supra, and cases cited.

Decree reversed and bill dismissed. Costs to be paid by appellees.

Mr. Justice BENJAMIN R. JONES concurs in the result.