484 A.2d 107

**Harold B. OWENS and Eloise Mary Owens**

**v.**

**Joseph P. HOLZHEID and Anne Holzheid.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1984.

Filed Nov. 2, 1984.

234

Wayne L. Weismandel, Gettysburg, for appellants.

Robert E. Campbell, Gettysburg, for appellees.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

DEL SOLE, Judge:

This action was initiated when Appellees (the Holzheids) filed a Complaint In Equity. The Holzheids averred that they owned a right of way across Appellants' (the Owens') land. The Holzheids sought to have the Owens enjoined from interfering with this alleged right of way. The trial court recognized the Holzheids' right-of-way and entered Findings of Fact, Conclusions of Law, and a Decree Nisi, enjoining further interference by the Owens. The Owens timely filed exceptions, which were dismissed. The court, by Order, then made the Decree Nisi absolute.

The Owens raise two issues on appeal: (1) Did the trial court err in finding that a valid easement exists in favor of the Holzheids, and (2) Did the trial court err in finding that the easement extends to the two other tracts of land owned by the Holzheids?

A review of the record reveals the following: In December 1967, the Owens purchased a tract of land (Tract "O"). Tract "O" is bordered by Finkle Hill Road to the south, and

to the north by an eight acre tract of land (Tract "A") which is owned by the Holzheids. In 1968 and 1969 two separate but contiguous tracts of land, in addition to Tract "A", were purchased by the Holzheids. These two tracts of land will be termed Tract "B" and Tract "C". Tract "A", which is woodland and which does not front on any public road, is bordered by Tract "O" to the south and Tract "B" to the north. To the north of Tract "B" is located Tract "C". At trial several witnesses were asked to draw the approximate location of the alleged right-of-way onto a diagram. They indicated that the right-of-way extended from Finkel Hill Road northward where it transversed Tract "O", and continued northward through Tracts "A", "B", and "C".

None of the deeds by which the parties to this action acquired title mention the right-of-way. However, a deed dated October 28, 1931, which was duly recorded and appears in the Owens' chain of title (hereinafter "Lerew to Bear deed") contains the following wording:

> This is also to certify that there is a certain Right of Way hereby reserved for the use of George Harbolt to get to his wood lot and return. Said right of way being granted by the *Ahls* when they sold these lots. (Emphasis in original deed)

George Harbolt was the Holzheids' predecessor in title to Tract "A". George Harbolt and his wife, Sue, acquired the tract from his parents, Henry G. and Sarah E. Harbold, on March 21, 1906.

The Holzheids rely on the above language to support their position that the right-of-way was acquired by either an express grant or by implication.

We find that the language in the "Lerew to Bear deed" does not operate as an express grant.

■ Easements which are created by express grants are to be construed in accordance with the intentions of the parties, as determined from examining the agreement as a whole. *Nallin-Jennings Park Co. v. Sterling,* 364 Pa. 611, 73 A.2d 390 (1950); *Graybill v. Hassel,* 167 Pa.Super. 284,

74 A.2d 686 (1950). The language in the "Lerew to Bear deed" states that there was "hereby reserved" a right of way for the use of George Harbolt.

█ This clause appears to indicate that the parties intended to create an express easement by way of reservation. The courts of this state have recognized the rights of a grantor to reserve an easement for his own use over land which he has conveyed. *Baptist Church in the Great Valley v. Urquhart,* 406 Pa. 620, 178 A.2d 583 (1962). The Owens, however, point out that the courts have been reluctant to recognize as valid, a reservation in a deed created in favor of a person who is a stranger to the deed. *See: Pribek v. McGahan,* 314 Pa. 529, 172 A. 709 (1934). George Harbolt was not a party to the "Lerew to Bear deed" transaction, nevertheless, this fact does not lead us to the conclusion that an express easement was not created.

█ The circumstance which is fatal to the Appellee's position that an express easement was created by reservation, is the status of the *grantor.* It is well settled law in Pennsylvania that an owner of land may arrange it as he pleases. *Piper v. Mowris,* 466 Pa. 89, 351 A.2d 635 (1976); *Lauderbach-Zerby Co. v. Lewis,* 283 Pa. 250, 129 A. 83 (1925). However, it seems even more elementary that one must be the owner of land before he has the power to dispose of it by granting an easement. Although the deed states that there is "hereby reserved" an easement, the provision continues: "Said right of way being granted by the *Ahls* when they sold these lots." The grantor, Mrs. Lerew, expressly recognized in the deed that a previous owner already granted this easement. As Mrs. Lerew owned Tract "O" subject to this already existing easement, she did not have the power and/or capacity to *create* the easement.

In *Ozehoski v. Scranton Spring Brooke Water Service Co.,* 157 Pa.Super. 437, 43 A.2d 601 (1945); *allocatur refused,* it was held that a reference in a recital of a deed to an existing right-of-way in favor of a person not a party to

the deed, was not a reservation. It was held that the recital recognized a prior grant or agreement. In that case, the defendants' predecessor in title, the Water Company, laid a pipe under the lands of a coal company in 1889. Subsequently, in 1917, the coal company conveyed their tract to Susquehanna Colliers Co. (Colliers Co.). The deed of conveyance contained the following recital: "This conveyance is made subject also to the following easements, rights of way, etc., viz: 7. All rights of way for pipe lines ... over and across the premises hereby conveyed ..." The Colliers Co. later conveyed the subject lot to the Everetts. The Everetts, in turn, conveyed to the plaintiffs. Neither the Everetts', nor the plaintiffs' deed referred to the recital of an easement. Defendants/appellants maintained that the language in the deed reserved for their benefit a right-of-way. Our court stated:

Appellants' argument assumes that the recital in the deed to the Colliers Company was, in law, a reservation. It was not. It did not create the easement but, on the contrary, referred to existing rights in the Water Company which had been enjoyed for many years. The fact, therefore, that the Water Company was not a party to that deed cannot be asserted against the existence of the easement. *Cf. Lauderbach-Zerby Co. v. Lewis*, 283 Pa. 250, 129 A. 83; *Pribek et al. v. McGahan et ux.*, 314 Pa. 529, 172 A. 709.

*Ozehoski v. Scranton Spring Brooke Water Service Co., supra*, 157 Pa.Super. at 439, 43 A.2d at 602. Likewise, the "Lerew to Bear deed" does not contain an express grant of an easement, but rather it recognizes and confirms an already existing right.

In this case, as in the *Ozehoski* case, the circumstances of the original creation of the right-of-way do not appear. Neither the Holzheids', nor the Owens' chain of title could be traced back far enough to establish the initial creation of the passageway. The Owens' chain of title could only be traced back to the crucial "Lerew to Bear deed". Holzheids' chain of title to Parcel "A" could be traced back only

so far as March 21, 1906. It may well be that the original grantors by express grant created an easement, but never recorded the deed. Alternatively, an implied easement may have been created. However, such cannot be proven at this late date.

█ Under the traditional test an easement by implication can be established in the following instance:

(W)here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right-of-way.

*Burns Manufacturing Co. v. Boehm,* 467 Pa. 307, 314, 356 A.2d 763, 767 (1976) [quoting *Tosh v. Witts,* 381 Pa. 255 at 261, 113 A.2d 226 at 228 (1955)].

█ In the instant case, there is some indication that C.W. Ahl was the unitary owner of the lands. However, the date of severance cannot be established. It also cannot be shown that the right-of-way was continuously used prior to the alienment. Our courts have recognized the difficulty of establishing these rights of ancient origin. For that reason a relaxed burden of proof falls upon one claiming such rights. *Woodlawn Trustees Inc. v. Michel,* 418 Pa. 398, 211 A.2d 454 (1965); *Hostetter v. Commonwealth,* 367 Pa. 603, 80 A.2d 719.

Under similar circumstances the *Ozehoski* court stated: The circumstances under which the first pipe line was laid, however, are not of controlling importance for they imply between the only parties concerned, a then or subsequent grant of the easement, or an agreement, the equivalent of a grant (*Horn v. Miller,* 136 Pa. 640, 20 A. 706, 9 L.R.A. 810) by the Coal Company to the Water Company in recognition of a prior grant or agreement. This was conceded by the Colliers Company by accepting the deed from the Coal Company and acquiescing in the burden of the easement thereafter.

*Ozehoski v. Scranton Spring Brooke Water Service Co.,*
*supra,* 157 Pa.Super. at 440; 42 A.2d at 602, 603.

 We find that the language in the "Lerew to Bear deed", while not a reservation, did operate as a recognition of a prior grant or agreement. Although the circumstances which surrounded these early events, first establishing the right-of-way, are not known, the language in the "Lerew to Bear deed" does give notice of a covenant of easement. The grantee, Bear, by accepting the deed and acquiescing in the burden of the easement, conceded the existence of the easement. The fact that the deed to the Owens, and to their immediate predecessors in title, did not refer to the easement is unimportant. A grantee in a deed must search the chain of title. This is the duty of the purchaser since he takes subject to a restriction or servitude which appears in the line of title although he may have no actual knowledge of its existence. *Ozehoski v. Scranton Spring, supra;* *Finley v. Glenn,* 303 Pa. 131, 154 A. 299 (1931).

In this case the Owens had constructive notice of the easement. They are in no position now to question the existence of the easement benefiting parcel "A", and they must submit to its burden under the covenant running with the land.

 The Owens' second issue relates to the trial court's determination that the easement extends in favor of Tracts "B" and "C". We must initially note that the Holzheids never claimed that their Tracts "B" and "C" had an easement right-of-way over the Owens' land. Nevertheless, the trial court concluded that there was an easement serving these other tracts of land. As the Holzheids never requested such relief, the trial court's actions were inappropriate. Moreover, there is insufficient evidence to support a finding that an express or implied easement was created.

The evidence relating back to the unitary owner's creation of a right-of-way, and the continued use of such way to benefit Tracts "B" and "C", is scant. With regard to Tract "A", the Holzheids had the advantage of the "Lerew

to Bear deed" which firmly established their rights. There is nothing in the record chain of title to Tracts "B" and "C" establishing a similar right-of-way.

■ It can be reasoned that the easement for the benefit of Tract "A" was created so its owner could get to and from Finkel Hill Road. Extending that easement to benefit Tracts "B" and "C" is contrary to the law of this state. It has long been held that an easement which benefits a particular piece of land cannot be enlarged and extended to other parcels of land to which the right is not attached. *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 54 A.2d 35 (1947).

We, thus, reverse the trial court's finding that the easement extends to benefit Tracts "B" and "C". The easement benefiting the Holzheids' Tract "A" and burdening the Owens' land should be strictly limited to access to, and egress from this eight acre tract.

For the reasons above stated, the order of the Court of Common Pleas of Adams County is affirmed in part and reversed in part.

MONTEMURO, J., filed dissenting opinion.

MONTEMURO, Judge, dissenting:

This is an appeal from the entry of a Final Decree in Equity wherein the Honorable Oscar F. Spicer, President Judge of the Court of Common Pleas of Adams County, enjoined the appellants (defendants below) from further interference with appellees' (plaintiffs below) use of a right-of-way across appellants' land.

The land in question is densely wooded, mountainous land in Latimore Township, Adams County. In an effort to prevent the readers of this opinion from getting lost in these woods, I have prepared a diagram of the land in question—as substantially taken from appellees' Exhibit Number 2. [Hereinafter referred to as "the diagram"].

On December 1, 1967, Harold B. Owens and his wife, Eloise Mary, moved to Pennsylvania from Chicago, Illinois. They purchased two separate parcels of land totalling 12.98 acres from Mae A. Books, widow. On one of the parcels there was a home which they made their residence. These two parcels of land—now shown as one parcel—appear as Tract "O" on the diagram.

The appellees, Joseph P. Holzheid and his wife, Anne, were apparently seeking a summer retreat from the urban lifestyle of their permanent residence in Baltimore, Maryland. The secluded, rolling landscape of Latimore Township in Adams County was the area they selected as a peaceful respite from city life. On August 3, 1968, they purchased Tract "C" consisting of four (4) acres, more or less, with a summer cottage erected thereon, from George H. Nelson and his wife, Jeanette. It should be noted here that, as shown on the diagram, appellees purchased Tract "C" subject to a right-of-way easement (not the right-of-way in dispute) for ingress and egress over a private lane from their newly acquired property to Route 94. Clearly if their land acquisitions had stopped with Tract "C" this litigation would not have followed.

However, approximately eight (8) months after their purchase of Tract "C", on April 16, 1969, appellees purchased Tract "B" consisting of seven (7) acres, more or less, from Eugene A. Reynolds and his wife, Thelma. Tract "B" is a densely wooded lot.

Appellees continued their acquisition of land to the south when on August 6, 1969, they purchased Tract "A" consisting of eight (8) acres, more or less, from William H. Harbold. Tract "A", as can be seen from the diagram, is to the north of and contiguous to the land owned by appellants; i.e., Tract "O". When the appellees filed their complaint in equity on February 27, 1980, more than eleven years after their first purchase of Tract "C", they still held all three tracts, "A", "B" and "C" as separate parcels of land. In fact, it would appear that there has never been a deed of consolidation. Tract "A" is also a densely wooded lot.

The land shown on the diagram is, for the most part, mountainous and difficult of passage. The highest point would be where appellees have their summer cottage on Tract "C", and the lowest point, or bottom of the mountain,

would be where appellants made their permanent home on Tract "O".

Several of the witnesses were asked to draw the location of the disputed right-of-way on the diagram. As can be seen on the diagram, it was drawn as extending from Fickel Hill Road, thence in a northward direction and traversing the land of appellants (Tract "O") as well as Tracts "A", "B" and even "C". However, whether or not there is a roadway or path through Tracts "A", "B" and "C" is, in my view, irrelevant. Appellees' claim is that they have an easement right of way over the land of appellants for ingress, egress and regress to and from Tract "A", to Fickel Hill Road. Appellees' say that the dominant tenement is Tract "A", and the servient tenement is appellees' Tract "O". It is important to note that appellees never claimed that their Tracts "B" and "C" had an easement right of way over the land of appellants. Nevertheless, as we shall see, the court below and the majority not only agree that appellants' land has the burden of providing ingress and egress to and from Fickel Hill Road to Tract "A", they add to that burden by creating an easement right of way in favor of Tracts "B" and "C" as well.

Appellee, Joseph Holzheid, testified that he became aware of a road going from Tract "C" down to Tract "B" within a year of his purchase of Tract "C" in August of 1968. After he purchased Tract "B" in April of 1969, he said that he drove his vehicle from his summer cottage on Tract "C" all the way down to Tract "A". After he purchased Tract "A", he said that he then used to drive all the way from Tract "C" to Fickel Hill Road. He did this two or three times a year until appellants put up a barricade in June of 1978. He said he always kept the roadway open and would trim it back once a year. Appellee acknowledged that he has access to Route 94 from a private lane or right of way which crosses the front of his Tract "C". Further there seems to be no serious dispute that appellees access to Route 94 from Tract "C" is much easier than their access from Tract "C" to Fickel Hill Road.

Appellant, Harold Owens, testified generally that when he purchased his property in 1967 there was no evidence of any roadway as shown on the diagram. He also testified that from 1967 and up to the time he erected the barricade, he either planted crops, leased it for farming or had it seeded and permitted it to go fallow. He erected the barricade because in Mid-June of 1978 someone had driven through his cover crops. Appellants allege that appellees offered to purchase the disputed right-of-way, but appellees deny any recollection of such an offer.

Appellees say they informed appellants that there was a deed (See Exhibit 11E) in appellants' chain of title from Sara Alice Lerew to Ida A. Bear dated October 28, 1931, and recorded on August 8, 1938, in Deed Book 149, at page 208 [hereinafter "Lerew to Bear deed"], which clearly indicated that there existed a right-of-way over appellants' land (Tract "O") for the use of George Harbold,[1] who was appellants' predecessor in title. The "Lerew to Bear" deed contained the following language:

"This is also to certify that there is a certain right of way hereby reserved for the use of George Harboldt to get to his wood lot and return. Said right of way being granted by the *Ahls* when they sold these lots." (Emphasis in original deed).

Further, appellees told appellants that the disputed right-of-way had been in use for over forty (40) years. Notwithstanding this, appellants continued in their refusal to either negotiate or remove the barricade; hence, on February 27, 1980, approximately twenty (20) months after the barricade was erected, appellees initiated the instant action in equity.

Following a view of the premises and a non-jury trial on June 10, 1982, which included the receipt into evidence of the depositions of William Harbold and Earl David Bricker, the chancellor on January 27, 1982, entered Findings of Fact, Conclusions of Law and a Decree Nisi enjoining

---

1. Also referred to as George Harboldt.

further interference by appellants with appellees' right-of-way.

On October 14, 1982, the chancellor dismissed appellants' exceptions and made the decree nisi absolute.

In their appeal to this court the appellants ask us to consider the following issues as set forth in the "Statement of Questions Involved":

1. Were the requirements of law for the valid creation of an easement either by express grant or by implication (other than by necessity) proved? Answered in the affirmative by the lower court.

2. Can an easement be extended by the owner of the dominant tenement to other land owned by him adjacent to or beyond the land to which it is appurtenant? Answered in the affirmative by the lower court.

In my view, there was no easement created, whether by express grant or by implication, which burdened appellants' Tract "O" and benefitted appellees' Tract "A". This being so, the question of extending the easement to benefit other lands of appellees would be moot.

I agree with the reasoning of the majority that the language in the "Lerew to Bear" deed precluded the *creation* by the grantor therein of an easement by express grant and, therefore, I shall not write separately on that issue.

Since I cannot agree with the majority that an easement was created by implication, I shall address that issue, and respectfully enter my Dissent.

In determining whether the appellants' land is burdened with an easement, we are guided by certain well established principles.

An easement is an interest in land in the possession of another which (a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest

exists; (b) entitles him to protection as against third persons from interference in such use or enjoyment; (c) is not subject to the will of the possessor of land; (d) is not a normal incident of the possession of any land possessed by the owner of the interest; and (e) is capable of creation by conveyance. RESTATEMENT OF PROPERTY § 450 (1944).

Generally, an easement may be created by (a) express conveyance, (b) implication or (c) prescription. 2 AMERICAN LAW OF PROPERTY §§ 8.17, 8.31, 8.44 (A.J. Casner ed.1952). In the case *sub judice*, appellees can prevail only by proof of the creation of an express easement or an implied easement, since they never claimed, nor could they on this record, that there was an easement by prescription.

The law is jealous of a claim to an easement, and the burden is on the party asserting such a claim to prove it clearly. *Becker v. Rittenhouse*, 297 Pa. 317, 325, 147 A. 51 (1929).

The majority has found that appellants' Tract "O" is burdened with an easement right-of-way by implication; thus disposing of appellants' first assignment of error.

In deciding whether an easement has been created by implication, the Pennsylvania courts have used two different tests, the traditional test and the Restatement test.

The traditional test has been described as follows:

Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate; first, a separation of title; second, that, before the separation takes place, the use which gives rise to the easement, shall have been so long continued, and so obvious or manifest, as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these three, another essential element is sometimes added,—that the servitude shall be

continuous and self-acting, as distinguished from discontinuous and used only from time to time.

*Id.*, 297 Pa. at 345, 147 A. at 53. *See also, DePietro v. Triano*, 167 Pa.Super. 29, 31–32, 74 A.2d 710, 711 (1950).

The view expressed in the RESTATEMENT OF PROPERTY § 474, and expressly adopted in Pennsylvania in *Thomas v. Deliere*, 241 Pa.Super. 1, 359 A.2d 398 (1976), "emphasizes a balancing approach designed to ascertain the actual or implied intention of the parties. No single factor under the Restatement approach is dispositive. Thus, the Restatement approach and the more restrictive tests ... co-exist in Pennsylvania." *Id.*, 241 Pa.Superior Ct. at 5 n. 2, 359 A.2d at 400 n. 2. *See also, Lerner v. Poulos*, 412 Pa. 388, 194 A.2d 874 (1963); *Schwoyer v. Smith*, 388 Pa. 637, 131 A.2d 385 (1957); *Spaeder v. Tabak*, 170 Pa.Super. 392, 85 A.2d 654 (1952).

In the RESTATEMENT OF PROPERTY § 476, the following factors are designated as important in determining whether the circumstances under which a conveyance of land is made can imply an easement:

(a) whether the claimant is the conveyor or the conveyee,

(b) the terms of the conveyance,

(c) the consideration given for it,

(d) whether the claim is made against a simultaneous conveyance,

(e) the extent of necessity of the easement to the claimant,

(f) whether reciprocal benefits result to the conveyor and the conveyee,

(g) the manner on which the land was used prior to its conveyance, and

(h) the extent to which the manner of prior use was or might have been known to the parties.

I agree with both the majority and the trial court that the Restatement test is of little use in determining whether or

not an easement by implication benefits appellees' Tract "A" and burdens appellants' Tract "O". The reason, of course, is that there is no deed of conveyance in existence from which the intent of the parties can be determined in ascertaining if an easement was to be implied.

At the same time, I cannot agree with the majority that an easement was created by implication under the traditional test. In my view, the evidence of unitary ownership of the subsequently created dominant and servient tenements is at best anecdotal and at worst, non-existent. More importantly, the second requirement under the traditional test that there be imposed by the unitary owner *prior to the severance* of an open, visible, permanent and continuous servitude is absolutely not to be found anywhere in this record. The traditional test as enunciated in *Becker v. Rittenhouse, supra,* 297 Pa. at 345, 147 A. at 53, requires that the servitude, created by the unitary owner prior to severance, be continuous and self-acting as distinguished from discontinuous and used only from time to time. Here the appellees' predecessor in title to Tract "A" was William Harbold who acquired the tract from his mother, Sue Harbold, on April 16, 1960. William's father, George Harbold, and his mother, Sue, had acquired Tract "A" on March 21, 1906 from William's paternal grandparents, Henry G. and Sarah E. Harbold. The "Being" clause on the 1906 deed went back as far as May 2, 1891. The only evidence in this case as to use was that George Harbold for a very brief period of time in the early 1930's had a portable saw mill on Tract "A", which was there about three to four weeks to saw out timber for the frame of a relative's home. Further, there was evidence that George used the disputed right-of-way to get his winter wood. The other evidence as to use was by trespassers and hunters. The evidence as to use of the disputed right-of-way before George acquired title from his parents is either non-existent or contradictory.

The Order entered by the lower court on October 4, 1982 affirming its Order of January 27, 1982 should be reversed.