604 A.2d 703

**G.C.G. MANN–HOFF and Gerald P. Hofmann**

**v.**

**Eric D. BOYER and Susan J. Boyer, Appellants.**

Superior Court of Pennsylvania.

Argued May 23, 1991.

Filed Feb. 20, 1992.

Reargument Denied April 16, 1992.

Joseph J. Zapitz, Morrisville, for appellants.

Ronald R. Bolig, Telford, for appellee.

Before WIEAND, BECK and HUDOCK, JJ.

BECK, Judge:

This is an appeal from a final decree in equity recognizing that plaintiffs-appellees, G.C.G. Mann–Hoff and Gerald Hofmann, have an easement of access to certain parking spaces on the residential property of defendants-appellants, Eric and Susan Boyer, and enjoining appellants from interfering with that easement. The trial court found that the easement arose by implication. We reverse on the ground that the standard for finding an easement by implication was clearly not met in this case.

The facts as revealed by our careful review of this record are as follows. Appellees (hereinafter referred to as "Hofmann") are the owners of realty at 141 North Main Street, Telford, Pennsylvania. They operate a tavern on that property. Appellants are the owners of realty at 147 North Main Street, Telford, which they use as their residence. The two properties are immediately adjacent to one another and at one time both had been owned by Steve and Marie Burch. The Burches purchased the properties in 1955 and 1959. At that time there was a stone or gravel lot behind the tavern and a lawn behind the residence. Around 1964, the Burches had the gravel area behind the tavern paved over and also had a portion of the lawn behind the residence paved. The Burches used this paved area for parking of their own cars and those of their family and friends, as well

as making it available for the patrons of the tavern to park when the Burches did not need it.[1]

In early 1974, the Burches sold their tavern at 141 North Main Street to Edward and Earlene Grubb. The Burches did not sell the residence. The Grubbs continued to use the property as a tavern. In the Agreement of Sale between the Burches and the Grubbs, the following provision appeared:

License. Seller hereby grants to Buyer the exclusive privilege of using the additional footage of approximately ten feet on Seller's residential property as a parking lot. Nothing in this privilege shall interfere with the right of Seller to sell said property provided in such case the Buyer shall be given ten (10) days' notice to vacate such property. . . .

The deed transferring the property to the Grubbs did not contain a reference to this revocable license or to any other arrangement between the parties regarding the parking area behind the residence. The Grubbs testified that in actual practice, their patrons parked at various places all over the paved area behind the two properties, but that the Burches and their family and friends also regularly parked in the area behind the residence. In fact, the Grubbs testified without contradiction that whenever the Burches needed the parking spaces behind the residence, they would ask the Grubbs to have the tavern patrons parked there to move their cars and the cars would immediately be moved.

In 1981, the Grubbs entered into a lease-purchase option agreement with appellee Hofmann. Hofmann immediately began to operate the tavern and actually purchased the tavern property in 1983. Hofmann never spoke to the Burches concerning any rights he might have in parking in the area behind the Burches' residence prior to acquiring the tavern property. He testified that the Burches have

1. Mrs. Burch specifically testified that when she and her husband owned the two properties, the tavern patrons did not have unlimited access to the parking area behind the residence. Rather, the patrons could park there only if the Burches did not need the area for their personal use.

4

never told him that his patrons could park there, but he thought it was "implied". He also testified that when he bought the property he knew that the Burches and their family and friends used the spaces behind the residence. Mrs. Grubb testified that she told Hofmann that the parking area behind the residence was not owned by the Grubbs, that they were not conveying it to Hofmann with the tavern property, and that she was aware that the Burches had put the residential property, including the parking area behind it, up for sale. Hofmann also stated that he had on at least two occasions offered to buy the parking area behind the residence from the Burches, who had refused his offers.

Hofmann's patrons did park in both the area behind the tavern and behind the Burches' residence. The Burches and their family and friends also continued to park there during the time Hofmann owned the tavern. The Burches testified that they simply never objected to Hofmann's patrons parking there when spaces were available.

This dispute arose when, on July 14, 1989, the Burches conveyed the residence to appellants, the Boyers. The day before the closing, the Burches delivered to Hofmann a notice stating that effective immediately all arrangements, oral or otherwise, for parking by Hofmann's patrons behind the residence were terminated due to the sale of the property. Immediately upon purchasing the residence, the Boyers placed protective parking curbs on the area behind the residence to prevent parking by tavern patrons.

Hofmann instituted this equity action on August 15, 1989, seeking a permanent injunction against the Boyers interfering with his patrons' right to park in the area behind the residence and claiming that he had an easement as to that area. Testimony at the hearing revealed the facts as set forth above. It also revealed, through testimony from Mr. Boyer, that the Boyers were told on purchasing the property that the paved area behind the property was part of the property they were buying, which it was. Mr. Boyer also stated that he and his wife did not wish to allow patrons of the tavern to park behind the residence for three reasons.

First, the residence had no other parking. There is no parking allowed in front of the residence on North Main Street and the back of the property is on an alley where no parking is possible. Second, the Boyers have young children who might be endangered by the patrons of the tavern driving through and parking in the paved area behind the residence. Third, the Boyers may wish to start a retail business in one area of the residence and would need the parking area themselves.

The trial court, after hearing the foregoing evidence, found that Hofmann had an easement arising by implication as to the parking area behind the residence and entered the following permanent injunction:

.... Defendants [Boyers] are Ordered and Directed to remove any existing obstructions from the paved parking lot located behind properties at 141 and 147 North Main Street, Telford, Bucks County, Pennsylvania and are enjoined from placing, installing, constructing or erecting any obstructions to Plaintiffs' free access thereto.

The trial court based this conclusion on a legal analysis that appears to be an admixture of the concepts of easement by implication and easement by prescription. The court found that the Burches, the original common owner of the two parcels, had subjected the lot behind the residence to the burden of parking on behalf of the tavern property in an "open, continuous and visible" manner, which was then continued by the Grubbs and Hofmann, and which, in the trial court's opinion, thereby became "a permanent use." The court further found that the revocable license granted by the Burches to the Grubbs in their Agreement of Sale, which specifically said that the right of tavern patrons to park behind the residence would terminate on sale of the residence, could not affect Hofmann's rights because it was not in the deed to the Grubbs and, therefore, no record notice of it was provided to Hofmann. Lastly, the trial court concluded that in this case, there was no permission granted by the Burches as to the use of the parking area behind the residence, but rather that they had subjected

that area to parking by tavern patrons in an "open, actual, continuous and hostile" manner for over 21 years. This reasoning appears to have convinced the trial court that Hofmann has an easement to this area, if not by implication, then by prescription.[2]

We are mindful that we are engaged in the review of a trial court's decision to enter a permanent injunction. As such, our scope of review is limited to determining whether the chancellor committed an error of law or abused his discretion. We are, of course, bound by the trial court's findings of fact unless they are unsupported by the evidence or demonstrably capricious. *Roberson v. Davis*, 397 Pa.Super. 292, 580 A.2d 39, 40 (1990); *Purdy v. Zaver*, 398 Pa.Super. 190, 580 A.2d 1127, 1130 (1990). However, we are not bound by the trial court's legal conclusions, or the conclusions the trial court has drawn from the facts, since these are merely the products of the trial court's reasoning. *See Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769 (1965).

In addition, we note that the burden imposed on a party seeking an injunction is heavy indeed. The remedy is an extraordinary one, which may not be given except in those rare situations where "... the rights and equity of the plaintiff are clear and free from doubt and the harm sought to be remedied is great and irreparable." *Cannon Brothers, Inc. v. D'Agostino*, 356 Pa.Super. 286, 514 A.2d 614, 617 (1986). Moreover, "[t]he law is jealous of a claim to an easement, and the burden is on the party asserting such a claim to prove it clearly." *Becker v. Rittenhouse*, 297 Pa. 317, 325, 147 A. 51 (1929).

In this case, the trial court concluded that appellee Hofmann had met his heavy burden of showing a clear right to the use of the parking area behind appellants' residence by

2. Although the trial court did not use the phrase "easement by prescription," its use of the standard of open and *hostile* use for *21 years* suggests that this is the analysis the trial court was applying in this section of its opinion. *See Keefer v. Jones*, 467 Pa. 544, 359 A.2d 735 (1976). Since Hofmann never asserted an easement by prescription, and clearly could not on this record, we will not address this issue.

showing that an easement by implication, and perhaps even an easement by prescription, had arisen. We, on the other hand, view this as a case where neither the Grubbs nor Hofmann ever had any more than a permissive use of this parking area and we find that such use never ripened into an easement.

The trial court relied upon the Supreme Court's opinion in *Burns Manufacturing Co., Inc. v. Boehm*, 467 Pa. 307, 356 A.2d 763 (1976), to justify its finding of an easement by implication. In *Burns*, the Court stated:

It has long been held in this Commonwealth that although the language of a granting clause does not contain an express reservation of an easement in favor of the grantor, such an interest may be reserved by implication, and this is so notwithstanding that the easement is not essential for the beneficial use of the property. The circumstances which will give rise to an impliedly reserved easement have been concisely put by Chief Justice Horace Stern speaking for the Court in *Tosh v. Witts* [381 Pa. 255, 113 A.2d 226], supra:

"[W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right of way." *Tosh v. Witts*, supra, 381 Pa. at 258, 113 A.2d at 228.

*Id.* 467 Pa. at 313–14, 356 A.2d at 767 (some citations omitted).

Although the foregoing language conveys a brief summary of the concept of easement by implication, other Pennsylvania cases not cited by the trial court provide a much more detailed description of this concept. We find the following statement of the proper method of analyzing a claim of easement by implication particularly elucidating:

In deciding whether an easement has been created by implication, the Pennsylvania courts have used two different tests, the traditional test and the Restatement test.

The traditional test has been described as follows: "Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate; first, a separation of title; second, that, before the separation takes place, the use which gives rise to the easement, shall have been so long continued, and so obvious or manifest, as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these three, another essential element is sometimes added,—that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time."

*Id.* [297 Pa.] at 345, 147 A. at 53. *See also DePietro v. Triano,* 167 Pa.Super. 29, 31–32, 74 A.2d 710–11 (1950).

The view expressed in the RESTATEMENT OF PROPERTY § 474, and expressly adopted in Pennsylvania in *Thomas v. Deliere,* 241 Pa.Super. 1, 359 A.2d 398 (1976), "emphasizes a balancing approach, designed to ascertain the actual or implied intention of the parties. No single factor under the Restatement approach is dispositive. Thus, the Restatement approach and the more restrictive tests ... co-exist in Pennsylvania." *Id.,* 241 Pa.Superior Ct. at 5 n. 2, 359 A.2d at 400 n. 2. *See also, Lerner v. Poulos,* 412 Pa. 388, 194 A.2d 874 (1963); *Schwoyer v. Smith,* 388 Pa. 637, 131 A.2d 385 (1957); *Spaeder v. Tabak,* 170 Pa.Super. 392, 85 A.2d 654 (1952).

In the RESTATEMENT OF PROPERTY § 476, the following factors are designated as important in determining whether the circumstances under which a conveyance of land is made can imply an easement:

(a) whether the claimant is the conveyor or the conveyee,

(b) the terms of the conveyance,

(c) the consideration given for it,

(d) whether the claim is made against a simultaneous conveyance,

(e) the extent of necessity of the easement to the claimant,

(f) whether reciprocal benefits result to the conveyor and the conveyee,

(g) the manner on which the land was used prior to its conveyance, and

(h) the extent to which the manner of prior use was or might have been known to the parties.

*Owens v. Holzheid,* 335 Pa.Super. 231, 484 A.2d 107 (1984) (Montemuro, J., dissenting). This court has further stated that an easement by implication can only be found "where the intent of the parties is clearly demonstrated by the terms of the grant, the surroundings of the property and other res gestae of the transaction." *See Hann v. Saylor,* 386 Pa.Super. 248, 251–52, 562 A.2d 891, 893 (1989); *Buffington v. Buffington,* 390 Pa.Super. 61, 568 A.2d 194 (1989); *Tomlinson v. Jones,* 384 Pa.Super. 176, 557 A.2d 1103 (1989).

In light of these principles, we conclude that Hofmann has not acquired an easement by implication to the parking area behind the residence. Whether we apply the traditional approach or the Restatement test, under either analysis Hofmann's claim clearly fails.

First, we note that the pertinent time on which to focus under either test for an easement by implication is the time of conveyance of one of these two parcels from their then common owner, the Burches, to the Grubbs. That was when the two parcels first became separately owned and, therefore, it is only upon this conveyance that an easement by implication could have been created. The concept of implied easement at issue in this case rests on determining whether an easement can be found to have been impliedly conveyed when one of two co-owned properties is conveyed without the other and there has, therefore, been a "separa-

tion of title." *See Buffington v. Buffington,* 390 Pa.Super. 61, 568 A.2d 194, 199 (1989).[3]

We begin by applying the traditional test. This test requires that Hofmann prove that at the time of separation of title, there was an open, visible, continuous and permanent use of the alleged easement, and that the easement is necessary to the beneficial enjoyment of the property conveyed.[4] Hofmann has failed to prove the requisite use and there is an equal paucity of evidence on necessity. The deed to the Grubbs did not expressly create an easement. On the question of whether the use was open, visible, continuous, and permanent we recognize that the conduct of the Burches when they owned and operated the tavern clearly did suggest a continuous, open and visible use of the parking area behind the residence for the benefit of the tavern. However, there is no suggestion from this record that the use was intended to or had become permanent. When the Burches conveyed the property to the Grubbs, they specifically agreed that the use was not permanent. In their Agreement of Sale, they agreed that the Grubbs would have the right to use the parking area only until the residence was sold. Neither the Burches nor the Grubbs testified that either party to the conveyance intended that the use of the parking area for the benefit of the tavern

3.  We note that there is another type of implied easement recognized in this Commonwealth. That is an easement implied from reference to a map or plate. *See Potis v. Coon,* 344 Pa.Super. 443, 496 A.2d 1188 (1985). Such an implied easement is not at issue here.

4.  We recognize that the language quoted above from the *Burns* opinion does not require that the proponent of an easement by implication show that the claimed easement was "necessary". This appears to conflict with other statements of the traditional test and with the Restatement test, both of which include necessity of the easement to the beneficial enjoyment of the property as a crucial factor in the analysis. One recent case has attempted to resolve this disparity. In *Hann v. Saylor,* 386 Pa.Super. 248, 562 A.2d 891 (1989), the court noted that those formulations of the traditional test that do require a showing of necessity do not mean to require a showing of "absolute necessity," but rather require only that the claimed easement be shown to be convenient or beneficial to the dominant estate. *Id.,* 386 Pa.Superior Ct. at 251, 562 A.2d at 893 n. 1. The *Hann* court further opined that where necessity is shown, this argues in favor of recognition of an implied easement.

would be permanent. It was permissive only, granted pursuant to a revocable license in the Agreement of Sale and terminable by the Burches when the residence was sold.

In addition, we note that this record is all but devoid of evidence of necessity. In this case, the record reveals that the tavern has its own nine or ten parking spaces in the lot behind it and there is municipal parking close by. Mr. Grubb testified without contradiction that some of his patrons at the tavern did indeed park at the municipal lot and that whenever the Burches asked him to, he had his patrons move their cars to another location. We see no indication that either the Grubbs' or Hofmann's beneficial enjoyment of the tavern property is dependent on access to the additional seven parking spaces behind the residence.

We are, of course, aware that the trial court found as a fact that Hofmann needed access to these seven additional parking spaces in order "to properly and economically run [his] business" and that without them, Hofmann would suffer irreparable harm. There is no evidence to support this finding. Indeed, at the first and comprehensive hearing in this matter, the trial court itself stated that it had heard *no* evidence of irreparable harm. At the second and last hearing, Hofmann presented no additional evidence and the only testimony heard, from Mrs. Burch and Mrs. Boyer, was not at all relevant to irreparable harm.

Turning to the more flexible balancing approach of the Restatement, it is even more clear that no easement by implication arose from the conveyance from the Burches to the Grubbs. This test focuses entirely upon ascertaining the intent of the parties. *See Thomas v. Deliere*, 241 Pa.Super. 1, 359 A.2d 398 (1976). In applying the eight factors of this test, which are set forth above, we note first that the parties to the conveyance from the Burches to the Grubbs have all uniformly stated that they did *not* understand the tavern property to have the benefit of an easement as to the parking area behind the residence. They *all* intended and understood that the Burches were not conveying an easement to the Grubbs, which would run with the

tavern property and continue after the Grubbs conveyed it, but rather were granting them a revocable license—i.e., permission to use the parking area until and unless the residence was sold. Therefore, we need not consider in any great detail the remaining factors of the Restatement test as they apply here. It is sufficient to say that none of the factors can overwhelm the clear evidence of the intent of the conveyor and conveyee found in the Agreement of Sale and further supported by their testimony.

We do add, nevertheless, that even a cursory analysis of the Restatement factors only buttresses our conclusion that no easement by implication has been proven. For example, as this court has stated, the most important of the factors is the degree of necessity of the claimed easement to the use of the land of the claimant. *See Thomas v. Deliere,* 241 Pa.Super. at 4, 359 A.2d at 399 (citing comment g to Restatement, Property § 476). *See also Flaherty v. DeHaven,* 302 Pa.Super. 412, 448 A.2d 1108 (1982). As we have previously determined, there is no evidence of necessity here.

The trial court states that the Agreement of Sale between the Burches and the Grubbs did not act as notice to Hofmann because it was not recorded; therefore, Hofmann can not be charged with notice of the fact that the Grubbs had only a revocable license to the parking area behind the residence and, therefore, could not convey to Hofmann any easement therein. In fact, Hoffman was aware of the limited use of the parking area by the Grubbs. The record reveals that the Grubbs orally informed Hofmann. Also, Hofmann's own actions in making offers to buy the parking area are consistent with showing that even without any knowledge of the terms of the agreement of sale, Hofmann knew full well that the conveyance from the Grubbs did not include an easement. Hofmann testified that the Burches never spoke to him regarding the parking area. Therefore, he had no knowledge of how the Burches themselves had used that area when they owned the tavern. Moreover, Mrs. Grubb testified without contradiction that she told

Hofmann that the Grubbs did not own the parking area and could not convey it to him, that he could use it when it was not in use by the Burches, and that the Burches were then trying to sell their residence. The trial court's conclusion that Hofmann is not chargeable with knowledge of the fact that he had only a permissive use of this area, which is all the Grubbs ever had, is inconsistent with this record.

We conclude that there is no evidence of anything more than a permissive use by Hofmann of the parking area behind the residence which was terminated when the Burches so notified Hofmann upon the sale of the residence to the Boyers.[5] It was error for the trial court to transform this permissive use into an absolute right of use in the form of an easement. We further note that the trial court's decree in this case actually expanded Hofmann's rights to this parking area beyond the scope of any of the prior tavern owner's rights. The trial court's decree prohibits the Boyers from interfering in any way with Hofmann's access thereto. Neither the Burches or the Grubbs ever provided their tavern patrons unlimited access to the parking area behind the residence. It was available to tavern patrons only when persons coming to the residence had no need of those parking spaces. The trial court's decree gave Hofmann unlimited use, thereby expanding his rights beyond those he would have had even if he had established the easement by implication that he asserted.

The trial court's order is reversed.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

This is a very difficult case. In reversing the decree entered by the trial court, the majority has made out a far better case for appellants than they were able to make out for themselves. In doing so, however, the majority has made its own review of the evidence and has determined

---

5. We add that a permissive use terminates by operation of law upon transfer of ownership of the servient tenement. *Sterner v. Freed,* 391 Pa.Super. 254, 570 A.2d 1079, 1081 (1990).

14

factually that an easement by implication was not intended by the parties. Therefore, it reverses the trial court's determination that the parties did intend to create an easement by implication. Although this is a mixed question of law and fact, I am of the opinion that the majority has usurped the fact finding function of the trial court.

In 1955, Stephen and Marie Burch purchased premises known as 141 North Main Street, Telford, Bucks County, where they conducted a tavern business. In 1959, they purchased the adjoining premises at 147 North Main Street. This lot had a frontage on North Main Street of sixty-three feet and contained a dwelling house, which the Burches used as their residence. Between 1959 and 1963, the Burches paved an area behind 141 North Main Street and behind a portion of 147 North Main Street, which they used as a parking lot for patrons of the tavern. In 1974, the Burches sold the tavern business and conveyed the tavern at 141 North Main Street to Edward G. Grubb and Earlene Grubb, husband and wife, who continued to operate the tavern. In 1981, the Grubbs sold the tavern business and granted a lease option for the tavern property to Gerald P. Hofmann, who incorporated the tavern and later exercised the option to buy the real estate. Between 1974 and 1989, the patrons of the tavern continued to use the entire paved parking lot to park their cars. The Borough of Telford prohibited and continues to prohibit parking on North Main Street. On July 14, 1989, the Burches conveyed the residence at 147 North Main Street to Eric D. and Susan J. Boyer, who immediately notified Hofmann that parking at the rear of their property would no longer be permitted. The Boyers also placed protective parking curbs which prevented cars from being parked on their property. Hoffman sued for equitable relief. The trial court concluded that Hofmann had an implied easement to use the paved lot at the rear of 147 North Main Street for parking by his patrons.

In *Burns Manufacturing Co. v. Boehm*, 467 Pa. 307, 356 A.2d 763 (1976), the Pennsylvania Supreme Court articulated the applicable principle of law as follows:

[W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right-of-way.

*Id.,* 467 Pa. at 314, 356 A.2d at 767, quoting *Tosh v. Witts,* 381 Pa. 255, 258, 113 A.2d 226, 228 (1955). See also: *Owens v. Holzheid,* 335 Pa.Super. 231, 238, 484 A.2d 107, 111 (1984); Restatement of Property § 474. In other cases, however, the courts have said that the rule merely creates an inference that an easement by implication was intended by the parties. This inference can be rebutted by evidence of circumstances showing a contrary intent. Thus, in *Lerner v. Poulos,* 412 Pa. 388, 194 A.2d 874 (1963), the Court said: "The determination of the existence or creation of an implied easement depends upon the intention of the parties as inferred from the circumstances existing at the time of the severance of the tract." *Id.,* 412 Pa. at 392, 194 A.2d at 876. See also: *Schwoyer v. Smith,* 388 Pa. 637, 643, 131 A.2d 385, 388–389 (1957); Restatement of Property § 474, comment b. The rationale for this approach has been stated in comment a to Section 476 of the Restatement of Property, as follows:

a. Rationale. An easement created by implication arises as an inference of the intention of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance. To draw an inference of intention from such circumstances, they must be or must be assumed to be within the knowledge of the parties. The inference drawn represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves. In the latter aspect, the implication approaches in fact, if not in theory, crediting the parties with an intention which they did not have, but which they probably would have had

had they actually foreseen what they might have foreseen from information available at the time of the conveyance. In determining implications of this character, the tendency is to isolate and to assign a specific value to such factors as frequently recur. Thus, it may be said that where the factor of necessity exists a particular implication arises. Properly, however, the implication involves a consideration of all the factors present. They are variables rather than absolutes. None can be given a fixed value. Each affects the decision as to the implication arising from all in a different degree in different situations.

Some of the important factors to be considered have been identified by Section 476 of the Restatement as follows:

(a) whether the claimant is the conveyor or the conveyee,

(b) the terms of the conveyance,

(c) the consideration given for it,

(d) whether the claim is made against a simultaneous conveyee,

(e) the extent of necessity of the easement to the claimant,

(f) whether reciprocal benefits result to the conveyor and the conveyee,

(g) the manner in which the land was used prior to its conveyance, and

(h) the extent to which the manner of prior use was or might have been known to the parties.

Thus, each decision must depend on the facts and circumstances surrounding the conveyance separating the larger tract into parts by the common owner. As such, the finding of facts by the trial court assumes great significance. The rule of law suggesting an easement by implication is not to be applied absolutely but must depend on all the circumstances.

Here, the majority finds the inference of an easement to be rebutted by a provision in the agreement by which the

Burches agreed to convey the tavern property to the Grubbs. This provision was as follows:

> Seller hereby grants to Buyer the exclusive privilege of using the additional footage of approximately ten feet (10′) on Seller's residential property as a parking lot. Nothing in this privilege shall interfere with the right of Seller to sell said property provided in such case the Buyer shall be given ten (10) days' notice to vacate such property.

The terms of the agreement, to be sure, constitute a factor to be considered. See: *Lerner v. Poulos, supra.* However, the trial court's opinion discloses that the fact finder considered this provision in the agreement of sale but did not consider it sufficient to rebut the inference of an easement by implication from other circumstances.

As a general rule, an agreement of sale merges into the deed conveying the premises. *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972); *Stoever v. Gowen,* 280 Pa. 424, 124 A. 684 (1924). The deed from the Burches to the Grubbs in this case did not contain language similar to that contained in the agreement of sale. Indeed, the deed contained no reference whatsoever to that portion of the paved parking lot which lay to the rear of the grantor's residence. The trial court concluded, therefore, that the parties' agreement was insufficient to rebut the inference arising from the circumstances. To hold otherwise would have been to hold subsequent purchasers of the tavern property captive to the terms of the secret, unrecorded agreement of sale between the Burches and the Grubbs.

The parking easement behind the residential property was evidenced by a paved lot which had been used continuously by the patrons of the tavern until parking was rendered impossible by the Boyers. Therefore, the parking easement was open, visible, permanent and continuous. I cannot agree with the majority's conclusion that the easement was not permanent. In my judgment, a paved parking lot evidences a use of the servient tenement which is every bit as permanent as a paved roadway.

18

I must also disagree with the majority's conclusion that the record is devoid of evidence of necessity. Absolute necessity is not necessary to the creation of an easement by implication. It is enough "that the easement [be] convenient or beneficial to the dominant estate." *Hann v. Saylor*, 386 Pa.Super. 248, 251 fn. 1, 562 A.2d 891, 893 fn. 1 (1989). Here, the parking lot was an adjunct of the tavern, necessary to accommodate the patrons thereof. Parking on the street in front of the tavern had been prohibited by ordinance. This evidence established that the parking lot was necessary to the full enjoyment of the tavern property, which was the dominant estate. I find no basis, therefore, for disturbing the trial court's finding that the parking lot was necessary in order to properly and economically run the tavern business.

The trial court determined that an easement in the paved parking lot had been created by implication. The majority concludes, however, that the evidence shows nothing more than a license, terminable at the will of the owner of the servient estate. I must respectfully dissent. In my judgment, the evidence was sufficient to support the trial court's finding that a parking easement was created by implication. Therefore, I would affirm the trial court's order entering an injunction.